WADE OILFIELD SERVICE COMPA-
NY, and Jesse Wade, Individually and
d/b/a Wade Oilfield Welders, Appel-
lants,

v.

PROVIDENCE WASHINGTON INSUR-
ANCE COMPANY OF ALASKA, and
the Northwest Rating Bureau/National
Council on Compensation Insurance,
Appellees.

No. S-2047.

Supreme Court of Alaska.

Aug. 5, 1988.

R. Collin Middleton, Marc G. Wilhelm, Middleton, Timme & McKay, Anchorage, for appellants.

Michael C. Geraghty, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Wade Oilfield Service Company and Jesse Wade (Wade) seek return of workers' compensation insurance premiums paid to Providence Washington Insurance Company of Alaska between 1976 and 1981. Wade contends (1) that he was overcharged

based upon the insurance company's erroneous application of the "payroll limitation rule," and (2) that he was charged premiums for coverage under the United States Longshore and Harbor Workers' Compensation Act (LHWCA)[1] although no risk of exposure existed under that Act. The State Division of Insurance concluded that no overcharge had occurred, and the superior court agreed on appeal. We affirm.

## I. FACTS

Wade operates a labor dispatch service which supplies workers to oil companies in the Kenai area. He employs welders and general laborers, who are dispatched at the oil companies' request to perform duties on the oil companies' behalf. Wade is compensated under separate contract with the oil companies for the use of his workers.

From 1976 to 1981, approximately 50% of Wade's workforce was dispatched to fixed oil platforms in the Cook Inlet. We are concerned here only with this portion of Wade's workforce.

### A. *Payroll Limitation Rule*

In determining the proper workers' compensation premium for Wade's workforce, Providence Washington was bound by statute to comply with the "payroll limitation rule" promulgated by the National Council on Compensation Insurance (NCCI), the licensed rating organization with which Providence Washington is affiliated. *See* AS 21.39.060; AS 21.39.040. During the period of time at issue here, the payroll limitation rule limited to $400 the amount of average weekly pay which could be considered by the insurer for purposes of determining an insured's premium. The weekly average was based upon an employee's "total time employed during the policy period." "Total time employed" is defined in the NCCI manual as "the sum of the portions of all contracts of employment" within the policy period. Thus, in determining insurance rates under the payroll limitation rule, it is crucial that the insurer determine exactly how many "employment contracts" were entered into during the

---

**1.** 33 U.S.C. §§ 901–50 (1986).

policy period, and how long each one lasted.

Of the Wade employees dispatched to offshore oil platforms, about one-half worked regular, seven-day, twelve-hour shifts, one week on/one week off.[2] Providence Washington concluded that such employees were employed by Wade under a single "employment contract."[3] Accordingly, Providence Washington figured the "total time employed" for these employees at fifty-two weeks per year for purposes of the payroll limitation rule. Wade claims that each one-week stint on the oil platforms constituted a separate "contract of employment," and, thus, Providence Washington should have considered only twenty-six weeks of employment per year per employee in calculating Wade's workers' compensation premiums.

### B. *LHWCA Surcharges*

During the period of time at issue here, the NCCI manual also contained a provision which allowed insurance companies to impose a surcharge, at a specified rate, for all "employees engaged in operations subject to the United States Longshore and Harbor Workers' Compensation Act." Under that Act, an injured employee is entitled to file for federal benefits if he or she is "engaged in maritime employment" and is injured upon the navigable waters of the United States. *See* 33 U.S.C. §§ 902(3), 903 (1986). Providence Washington took the position that workers employed on fixed offshore oil platforms were engaged in maritime employment upon the navigable waters of the United States, and were thus "subject to" coverage under the LHWCA. Consequently, it imposed the surcharge on all policies issued for such workers.

Wade disputes Providence Washington's contention that LHWCA exposure existed

for his workers. He claims that Providence Washington misled him into believing that he needed to obtain LHWCA coverage when in fact there was no risk of exposure under the Act. Alternatively, Wade contends that, even if exposure did exist, the surcharge itself was unreasonably excessive in light of the degree of risk actually presented. He seeks return of some or all of the money paid in surcharges.

### II. PROCEDURAL HISTORY

In October, 1982 Wade filed suit in the superior court, alleging failure of consideration and tortious misrepresentation, and seeking return of approximately $222,573 in alleged overcharges. Pursuant to Providence Washington's motion, the trial court stayed all proceedings on the payroll limitation rule claims and remanded the matter to the Division of Insurance for a determination as to whether Providence Washington had correctly interpreted and applied the rule in this case. The court concluded that this was a matter "within the unique expertise and competence of the Division of Insurance," and, thus, should be initially referred to that agency for determination.[4]

As to the LHWCA surcharge, the trial court determined, as a matter of law, that:

> At all times relevant to this litigation, plaintiffs were exposed to liability to their employees under the [LHWCA] and therefore, plaintiffs are not entitled to [refund of all surcharges].

However, the court stayed action on certain aspects of Wade's LHWCA claims, and remanded to the Division of Insurance for a "determination of an appropriate rate for the type of insurance procured."

---

2. These workers were "at will" employees with no written contracts of employment.

3. Where employees worked more erratic schedules, the employment periods were treated as separate contracts.

4. Although couched in terms of "exhaustion of remedies," the court's actions seem more consistent with an exercise of the "primary jurisdiction" doctrine, which provides that

a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise.

*State v. Zia, Inc.,* 556 P.2d 1257, 1262 (Alaska 1976) (quoting *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1032–33 (Alaska 1972)).

The Division subsequently found that Providence Washington had properly applied the payroll limitation rule, and that the rate charged for LHWCA coverage had been an appropriate rate. Wade appealed the Division's rulings to the superior court, and the superior court affirmed. We do likewise.

## III. DISCUSSION

■ We note at the outset that this case was improperly characterized as an appeal by the parties and by the court below. Where, as here, the trial court has stayed the underlying action, and retained jurisdiction over the matter pending resolution of specified questions within the special expertise or authority of an administrative agency, the agency's rulings are to be viewed as interlocutory in nature, and are directly appealable only upon entry of final judgment in the underlying superior court action. *See City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629–31 (Alaska 1979) (overruling in part *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972), wherein the court treated as final a superior court order referring a specific question to an administrative agency for initial determination). In such cases, the litigants' proper course of action following issuance of the agency's determinations is to move the superior court for an order directing the civil action to continue, with application of the newly-rendered agency conclusions to the remaining issues therein.[5] *See Jeffries v. Glacier State Telephone*, 604 P.2d 4, 6–7 (Alaska 1979). Once the action is resumed in superior court, either party may request that the court set aside, modify, or remand the agency's decision, in accordance with the law governing the scope of review of agency determinations. *See Jeffries*, 604 P.2d at 10 & n. 22. However, the superior

court's decision on such questions may be appealed only after final judgment in the underlying lawsuit. Alaska R.App.P. 202.

■ In the instant case, we will exercise our discretion to treat this matter as a petition for review and will thereby reach the merits of the questions presented notwithstanding the procedural deficiency.[6] *See, e.g., Thibodeau*, 595 P.2d at 631; *Leege v. Strand*, 384 P.2d 665, 666–67 (Alaska 1963); *see also* Alaska R.App.P. 610. Accordingly, we turn now to the substantive propriety of the rulings made by the Division of Insurance.

### A. *Payroll Limitation Rule*

■ The Division framed the issue before it as follows:

Did these employees have twenty-six separate one-week periods of employment or one full year of regularly scheduled employment, for purposes of determining Workers' Compensation premiums by Wade's insurer, [Providence Washington]?

This question necessarily requires a determination of the nature and terms of the employment contract existing between Wade and his employees, and thus can only be answered with reference to the intent of those parties, as expressed by their words and conduct. *See Hendricks v. Knik Supply*, 522 P.2d 543, 546 (Alaska 1974). Such determinations are inherently factual in nature. *See Jackson v. White*, 556 P.2d 530, 532 (Alaska 1976) (existence of oral contract and terms thereof are issues for the trier of fact). Accordingly, the proper standard of review for the Division's findings is the "substantial evidence" test. *See Storrs v. State Medical Board*, 664 P.2d 547, 554–55 (Alaska), *cert. denied*, 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983).[7]

---

5. It appears from the record that the parties in this case may have attempted to reactivate the civil action after the agency decision, but that these attempts were rebuffed by the superior court, which ordered them to proceed with a separate appeal of the Division's determinations.

6. In light of the parties' apparent reliance on earlier superior court rulings, and because we believe that our disposition of this case will

effectively dispose of the issues remaining in the underlying civil action, we conclude that such treatment is justified in order to prevent "unnecessary delay, expense, [and] hardship" to the parties. Alaska R.App.P. 610(b)(1).

7. In *Storrs*, we held that the substantial evidence test is appropriate where an administrative agency's "ultimate decision depended primarily on findings of fact," even where the

Under this test, we will uphold an agency's decision where it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 554. We conclude that the Division's findings meet this test.

 In support of its position that the workers in question were intended to be employed under a single contract for continuous week-on/week-off employment, Providence Washington introduced evidence that (1) Wade's employees filled out workers' compensation and unemployment insurance claim forms indicating continuous, week-on/week-off employment, (2) Wade continuously carried the employees in question on his group health plan even during weeks when they were not on the job, (3) Wade's employees regularly retained company-issued work equipment during their weeks off, (4) Wade paid these employees at regular two-week intervals, rather than within three days of their alleged weekly "terminations," as would be required under AS 23.05.140(b),[8] and (5) during their weeks on the rigs, these employees worked 84 hours per week, making their average hours just slightly over 40 hours per week if viewed as continuous employees.

We believe that the foregoing evidence is of sufficient relevance and quantity that a reasonable mind could accept it as adequate to support the conclusion that Wade had a single, continuous contract with his employees for week-on/week-off employment. Accordingly, we affirm the Division's conclusion that Providence Washing-

ton correctly applied the payroll limitation rule in this case.

### B. *LHWCA Surcharges*

Before remanding to the Division for a ruling on the propriety of the rate charged by Providence Washington for LHWCA coverage, the superior court expressly ruled on the coverage issue itself. The court found that Wade was "exposed to liability to [its] employees" under the LHWCA. Nearly two and one-half years after the superior court's ruling, and shortly after the Division's initial decision on remand, the United States Supreme Court decided *Herb's Welding v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). In that case, the Court held that a welder, who performed exclusively welding functions on a fixed offshore oil platform, was not engaged in "maritime employment" and thus did not qualify for benefits under the LHWCA. *Id.* at 425, 427, 105 S.Ct. at 1428, 1429, 84 L.Ed.2d at 415, 417.[9] The Supreme Court's ruling suggests that some or all of Wade's employees might fall outside the scope of the federal workers' compensation scheme.[10]

Wade concluded that *Herb's Welding* was controlling as to his potential exposure under LHWCA, and, hence, was determinative of his right to return of his premiums. Accordingly, he sought relief from the prior adverse rulings. In July, 1985, Wade moved the Division for relief from judgment under Civil Rule 60(b).[11] The Division denied Wade's request, and Wade appeals, contending that such denial was an

---

agency's jurisdictional authority arises from its special expertise in a given area. 664 P.2d at 554–55.

**8.** AS 23.05.140(b) provides:

If the employment is terminated, regardless of the cause of termination, all wages, salaries or other compensation for labor or services become due immediately and shall be paid within three working days after the termination at the place where the employee is usually paid or at a location agreed upon by the employer and employee.

**9.** The Supreme Court reversed the decision of the Fifth Circuit Court of Appeals, which had concluded that all workers on offshore drilling

platforms were engaged in maritime employment. *See Herb's Welding v. Gray,* 703 F.2d 176, 177–78 (5th Cir.1983).

**10.** Whether Wade may actually take advantage of the *Herb's Welding* decision depends upon (1) whether it is subject to retroactive application, and (2) whether the labor engaged in by Wade's employees is factually analogous to that engaged in by the employee in the *Herb's Welding* case. The answer to these questions is by no means clear; however, in light of our holding *infra,* we find it unnecessary to reach them.

**11.** Wade sought relief under Civil Rule 60(b)(1) (mistake) and 60(b)(6) (any other reason justifying relief from judgment).

abuse of discretion. We affirm the Division's ruling.

■ In asserting his right to relief, Wade apparently assumes that a change in the law which reduces potential liability in a manner favorable to the insurer *ipso facto* entitles the insured to a return of premiums paid in contemplation of some higher level of legal exposure. We cannot accept so broad a proposition. In determining the propriety of past premiums in workers' compensation insurance contracts, we believe that the relevant inquiry should focus, not on whether subsequent developments in the law have altered the insurer's potential liability under the insurance policy, but rather, on whether the law in existence at the time the insurance policy was procured was such that a reasonable person would have perceived a risk of liability and insured against it. *See* R. Keeton, *Basic Text on Insurance Law* 3 (1971) (risk may be expressed as an individual's "guess at the unknown; his prediction concerning potential loss, partly reasoned from things known and partly guesswork").

As we noted in *Sang Suh v. Pingo Corp.*, 736 P.2d 342, 345 (Alaska 1987), "[o]ne risk inherent in any insurance transaction is that laws establishing liability may change." Accordingly, the crucial question in the case at bar is whether, at the time Wade's insurance was procured, there existed an insurable risk that Wade's employees were "subject to" the provisions of the LHWCA.[12] We think that such a risk did indeed exist.

■ The question whether workers employed on fixed offshore oil drilling platforms are "engaged in maritime employment" within the meaning of the LHWCA is one which has sparked substantial debate among commentators and courts since the enactment of the maritime employment "status test" in 1972. *See* Robertson, *Injuries to Marine Petroleum Workers: A*

*Plea for Radical Simplification*, 55 Tex.L. Rev. 973, 994–96 (1977). *See generally* Note, *Herb's Welding, Inc. v. Gray: Fixed Offshore Platform Workers and the Status Requirement of the LHWCA*, 31 Loy. L.Rev. 1056 (1986); Note, *The Fixed–Floating Phantom of LHWCA Jurisdiction, Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421 (1985), 10 Suffolk Transnational L.J. 171 (1986). Indeed, the *Herb's Welding* decision itself, which was rendered by a sharply divided 5–4 Court, acknowledged that its holding effectively overruled established precedent in the Fifth Circuit Court of Appeals, which had held that employees involved in offshore drilling activities are engaged in maritime employment for purposes of the LHWCA. *See Herb's Welding*, 470 U.S. at 419–23, 105 S.Ct. at 1425–27, 84 L.Ed.2d at 411–14; *see also Pippen v. Shell Oil*, 661 F.2d 378, 383–85 (5th Cir.1981). Whatever the future impact of the *Herb's Welding* decision, the result reached by the Court in that case can hardly be said to have been a foregone conclusion.

In the case at bar, there was substantial agreement amongst testifying experts that it was standard operating procedure for brokers and insurance companies in Alaska to recommend or require LHWCA endorsements for all fixed-platform offshore oil workers in light of potential exposure under the Act. We are not convinced that such practice was unreasonable or ill-advised in light of the law as it existed prior to *Herb's Welding*. Thus, we conclude that the Division of Insurance was justified in finding that a "risk of loss was transferred to the insurer" such as would permit imposition of the LHWCA surcharge. We cannot say that the Division abused its discretion in refusing to grant relief from its earlier judgment solely on the basis of the *Herb's Welding* decision.

■ Finally, we reject Wade's claim that the Division erred in failing to find that the

---

12. Wade argues that "[i]t is irrelevant to the calculation of [LHWCA] surcharge premiums whether a risk of loss transferred to the insurer. Under Wade's insurance policy and the NCCI rating manuals, the transfer of a risk, in itself, does not earn premiums." We find this argu-

ment untenable. Wade's construction of the aforementioned documents, which suggests that the insurer agreed to accept a risk of loss while receiving little or nothing in return, is unreasonable, and we decline to accept it.

amount of the surcharge, even assuming LHWCA coverage, was excessive in light of the actual risk of employee filings under the Act. We are satisfied that there was substantial evidence to support the Division's conclusion that the rate charged was reasonable in light of the statistical information available at the time the rate was set.[13] The fact that the surcharge was later reduced or discontinued by the Division does not entitle Wade to return of the earlier premiums.

For the foregoing reasons, the findings and conclusions of the Division of Insurance are AFFIRMED.

---

**13.** AS 21.39.030(a)(2) expressly provides that rating organizations, in determining appropriate rates, may consider "past and prospective loss experience inside *and outside* this state." (Emphasis added.) Providence Washington introduced expert testimony indicating that NCCI relied primarily on outside experience in determining the surcharge because Alaska's experience had not, at that time, become statistically credible. Wade introduced no evidence which would directly dispute this assertion, and we agree with the superior court's assessment that Providence Washington's evidence was sufficient to support the Division's finding.