Alf R. SKAFLESTAD and Karlene Greenewald, for themselves and for all others who are similarly situated, Appellants,

v.

HUNA TOTEM CORPORATION, and Huna Totem Corporation Shareholder Settlement Trust, Appellees.

No. S–10353.

Supreme Court of Alaska.

Aug. 29, 2003.

Rehearing Denied Oct. 16, 2003.

Fred W. Triem, Petersburg, for Appellants. Bruce E. Gagnon, Atkinson, Conway & Gagnon, for Appellee Huna Totem Corporation Shareholder Settlement Trust.

Daniel G. Bruce, Baxter Bruce & Sullivan, P.C., Juneau, and Barbra Zan Nault, Bankston, Gronning, O'Hara, Sedor, Mills, Givens & Heaphey, P.C., Anchorage, for Appellee Huna Totem Corporation.

Before: FABE, Chief Justice,
EASTAUGH, BRYNER, and CARPENETI,
Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

In keeping with a recommendation by Huna Totem Corporation's board of directors, the company's shareholders voted to put a large sum of available funds into a settlement trust. Certain shareholders later filed a class action, alleging that proxy information Huna Totem sent them in creating the trust was materially misleading because it failed to disclose that, once established, the trust could not be modified or terminated by shareholders unless two-thirds of its trustees recommended the action. After a bench trial, the superior court entered judgment for Huna Totem, finding that, although some of its proxy information was incomplete and ambiguous, the totality of the information was not materially misleading. Because the superior court applied the correct test of materiality and the evidence supports its ruling, we affirm the judgment in Huna Totem's favor.

## II. FACTS AND PROCEEDINGS

Huna Totem Corporation is an Alaska Native village corporation organized under the Alaska Native Claims Settlement Act (ANCSA).[1] In 1993 Huna Totem entered into a tax settlement with the IRS that left the corporation with more than $35 million in unrestricted cash in 1994. In debating what to do with these funds, Huna Totem's board

---

1. 43 U.S.C. § 1601–1629h (1986 & Supp.2003).

of directors grew interested in the idea of establishing a settlement trust, and eventually the board proposed that its shareholders dedicate the settlement funds to a settlement trust.[2]

In May 1994 the board sent shareholders an introductory "Shareholder Information Packet" describing the recent IRS settlement and introducing the idea of a settlement trust. This packet described the proposed trust in general terms, emphasizing that the information it contained was "not by any means a complete discussion of all of the important aspects of the Trust." In addressing how the trust could be modified or changed once adopted, the packet said only that "[a]t periodic intervals—initially five years after the Trust is established, and then once every ten years thereafter—the beneficiaries could, by vote of a two thirds of all units, choose to distribute some or all of the accumulated income and principal, or to terminate the Trust entirely." The preliminary packet promised that "[s]hareholders will be hearing and learning more about the Trust in the upcoming months, and will receive additional, detailed information."

In keeping with this promise, two months later, in July 1994, Huna Totem sent its shareholders a formal proxy solicitation that covered the proposed trust's review and termination provisions in far greater detail. The solicitation explained that, once established, the trust could be amended or ended by shareholders only if the action was recommended by the trust's board of trustees:

> The accumulated income and Settlement Trust principal generally would not be available to be distributed, except that five years after the Settlement Trust is established, and then once every ten years thereafter—upon a recommendation of two-thirds of the trustees, ratified by a two-thirds vote of the unit holders, some or all of the accumulated income and principal could be distributed or the Settlement Trust could be terminated entirely.

This explanation mirrored the provisions of the proposed settlement trust itself, the full text of which accompanied the July 1994 proxy solicitation as an appendix.

After the corporation mailed the proxy solicitation in late July 1994, members of its board conducted a series of shareholder workshops to discuss the proposed trust. Shareholders then overwhelmingly approved the trust proposal at a special meeting in September 1994, and the trust was established.

The five-year review began in January 2000. Huna Totem solicited shareholder comments and held public meetings in several cities. The corporation also hired a research company to survey shareholders' opinions on the trust; this "survey showed that a substantial majority of unit holders favored continuation of the Trust, although many wanted some distribution of the trust corpus." In March 2000 the trustees voted to recommend a "relatively small" partial liquidation of the trust. Shareholders were then sent an information packet and a ballot to vote on this recommendation. They voted to ratify the trustees' recommendation by a six-to-one ratio. The settlement trust subsequently paid shareholders distributions of $50 per share, totaling roughly $4.4 million; the rest of the trust assets, about $40 million by then, remained in the settlement trust, subject to further review in ten years.

Soon after the board of trustees issued its five-year recommendation, several dissatisfied shareholders filed the class action at issue here, seeking to terminate and invalidate the settlement trust in its entirety because, they alleged, the information provided to shareholders by Huna Totem before the trust was adopted materially misled them concerning their right to vote on the issue of termination. In particular, these shareholders argued that the proxy materials led them to believe that shareholders would have the unqualified right to vote on the trust's continued existence without regard to any recommendation by the trust's board of trustees.

---

**2.** Under Congress' 1987 amendments to ANCSA, "Native Corporations are allowed to convey assets to a 'settlement trust' to 'promote the health, education, and welfare of its beneficiaries and preserve the heritage and culture of the Na-

tives.'" *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1332 (Alaska 1997) (Fabe, J., dissenting) (quoting 43 U.S.C. § 1629e(b)(1) (Supp.1994)). Settlement trusts offer significant tax advantages and insulate assets from creditors' claims.

The shareholders based their claims in large part on the preliminary packet of information provided to shareholders in May 1994, which stated that shareholders "could" vote to review the trust in five years but did not explain that the shareholder vote would be contingent on the trustees' recommendation. According to the class action shareholders, the confusion generated by these preliminary communications was perpetuated by oral representations made by directors who met with shareholders to answer questions after Huna Totem mailed its formal proxy solicitation in July 1994. Huna Totem denied these allegations, claiming that its proxy materials accurately explained the five-year review process.

After a four-day bench trial, Superior Court Judge Patricia A. Collins ruled in favor of Huna Totem. Although Judge Collins believed that "the actual Proxy Statement is clear and unambiguous," she found that the "oral statements by directors and the 'brief' review of the proposed trust included in shareholder materials distributed prior to the vote were ambiguous in that they omitted information about the role of the trustees in the review process and procedure regarding future shareholder votes to modify or terminate the trust." But noting that, under *Brown v. Ward,* Alaska law deems proxy materials to be *materially* misleading or false only " 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote,' " [3] the judge found that any information omitted from Huna Totem's preliminary materials or the directors' post-solicitation oral communications was not materially misleading in light of "the total mix of information available about the review process." [4] Furthermore, though emphasizing that she was "not at all convinced that the alleged omissions had any impact on the initial vote to create the trust," Judge Collins alternatively found that the plaintiffs' proposed remedies—setting aside the trust, an award of nominal damages, and/or a revote on establishing the trust—would be barred as inequitable "[b]ecause of the long delay in seeking court intervention" and the significant harm that would inevitably result from " 'unscrambling' the trust at this late date."

The plaintiffs/shareholders appeal.

## III. DISCUSSION

### A. Standard of Review

■ The two central issues in this case—whether the superior court applied the wrong

---

3. *Brown v. Ward,* 593 P.2d 247, 251 (Alaska 1979) (quoting *TSC Indus., Inc., v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

4. Judge Collins's core findings on ambiguity and materiality are as follows:

> 7. While the actual Proxy Statement is clear and unambiguous, oral statements by directors and the "brief" review of the proposed trust included in shareholder materials distributed prior to the vote were ambiguous in that they omitted information about the role of the trustees in the review process and procedure regarding future shareholder votes to modify or terminate the trust. Thus, the plaintiffs have established an omission in proxy materials including oral statements and the shareholder information packet.
>
> 8. While a close question, the above omissions and/or ambiguity in the oral representations and brief review of the proposed Settlement Trust do not, however, meet the materiality standard of *Brown v. Ward.* Specifically, under an objective standard, a reasonable shareholder considering future review of a trust for purposes of modifying or terminating the trust would reasonably anticipate some process or procedure would apply both to the review process and to the vote. While the "brief review" of the trust in the April mailing and oral representations likely did not detail the process for future review, it is difficult to conclude that such an omission would cause an objectively reasonable shareholder to assume no process would be followed and/or that a "free for all" vote on modification or termination would occur.
>
> 9. While, again, a close question, this court cannot find[ ] on the particular facts of this case that there is a substantial likelihood that a reasonable shareholder would have considered it important that the five-year review process would entail review and recommendation regarding trust changes by the duly-elected trustees to precede any shareholder vote on modification or termination, particularly in light of the total mix of information available about the review process. Using an objective standard, a reasonable shareholder who thought the precise mechanism for review was important would likely have read the Proxy Statement and/or proposed Settlement Trust Agreement, both of which detailed the role of trustees in the review process and both of which were provided to shareholders.
>
> (Footnote omitted.)

legal test in determining materiality and whether the court erred in failing to find material misstatements under the correct legal standard—primarily present questions of law; but the issue of materiality also implicates issues of fact.[5] We review the trial court's legal determinations using our independent judgment and review its factual determinations for clear error.[6]

### B. Alaska Securities Law

■ Alaska corporations created under ANCSA are exempt from the federal Securities Act of 1933 and Securities Exchange Act of 1934.[7] To the extent that the shareholders' claims are not directly governed by ANCSA, then, they are controlled by Alaska law rather than federal securities law.[8] Nevertheless, as we held in *Brown v. Ward*, interpretations of relevant SEC and federal common law prohibitions against material falsehoods in proxy statements provide a "useful guide" in interpreting similar securities issues arising under state law in ANCSA cases.[9]

■ The Alaska Securities Act prohibits misrepresentations of material fact in proxy solicitations:

A person may not, in a document filed with the administrator or in a proceeding under this chapter, make or cause to be made an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.[10]

Under this provision, a two-fold analysis applies to misrepresentation issues in proxy solicitation cases, requiring courts to ask, first, whether any statements amounted to misrepresentations and, if so, whether those misrepresentations are material when considered "in the light of the circumstances under which they are made." [11]

The relevant definition of "misrepresentation," as set forth in 3 AAC 08.315(a), includes both positive statements and omissions:

[A] statement that, at the time and under the circumstances in which it is made (1) is false or misleading with respect to a material fact; (2) omits a material fact necessary in order to make a statement made in the solicitation not false or misleading; or (3) omits a material fact necessary to correct a statement, in an earlier communication regarding the solicitation of a proxy for the same meeting or subject matter, which has become false or misleading.

■ Under these provisions, then, statements or omissions qualify as misrepresentations when they are "misleading or false," and "a misleading or false statement 'is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.' " [12]

### C. Shareholders' Claims

#### 1. Alleged misapplication of a *scienter* requirement

■ The shareholders first assert that the trial court erred by applying the wrong legal standard to their proxy solicitation claims. Specifically, they claim, Judge Collins imposed a *scienter* requirement and refused to impose liability because she found that management did not intend to deceive the shareholders. Huna Totem does not dispute that

---

5. *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. 2126 ("The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts.").

6. *See N.A. v. State*, 19 P.3d 597, 600–01 (Alaska 2001) ("We defer to the trial court's factual findings unless clearly erroneous and review de novo any questions of law.").

7. *See* 43 U.S.C. § 1625 (1986 & Supp.2003).

8. *See Brown v. Ward*, 593 P.2d 247, 249 (Alaska 1979).

9. *Id.* at 250 ("Since the SEC fraud rule and the common law both prohibit material falsehoods, authorities construing the SEC rule are a useful guide in determining when a misstatement is material under Alaska common law.").

10. AS 45.55.160.

11. *Id.*

12. *Brown*, 593 P.2d at 251 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

it would be improper to require *scienter* in determining materiality but insists that Judge Collins applied the correct materiality standard and did not require *scienter*. The record supports Huna Totem's position.

The shareholders base their *scienter* argument on several comments in the court's oral and written rulings in which Judge Collins expressed her view that the legal dispute in the present case was not the result of "bad people or bad motives." In her oral decision, for example, Judge Collins prefaced a remark about the shareholders' request for declaratory and injunctive relief with the observation that there was an "absence of fraud and intent to deceive." When discussing the evidence concerning false and misleading proxy materials in her subsequent written findings, Judge Collins made the same point, stressing that, "[a]s stated in [the] oral findings, the court is convinced that there was no intent by the directors of Huna Totem Corporation to mislead shareholders about the Settlement Trust."

But as Huna Totem correctly points out, the challenged comments concerning the corporation's lack of intent or bad faith did not address Judge Collins's application of the *Brown v. Ward* materiality test. Rather, when read against the background of the decision as a whole, these comments reflect little more than the court's desire to mend the relationship between Huna Totem and its shareholders, which the court described as having degenerated into "finger pointing" and "name calling" during the trial. Indeed, in her oral findings, Judge Collins expressly described her remarks on *scienter* as comments preliminary to her decision:

> Before I enter my oral findings, ... I think it's important that I make some preliminary observations about the case and about the persons involved in the case. Many disputes come before the court where the parties ... attempt to portray the opposing party as bad people with bad motives. This case is no different. Those kinds of allegations have been made. I am convinced that this case does not involve bad people or bad motives[.]

And although the court returned to this theme at several points in its oral and written findings, it directed its comments not to the issue of materiality, but to the "tenor of argument and discussion between the [parties]." In contrast, when addressing the issue of materiality, Judge Collins described and applied *Brown v. Ward's* objective "reasonable shareholder" test with pinpoint accuracy, never mentioning or hinting at any consideration of motives or *scienter*.

The shareholders nonetheless insist that "the court directly link[ed]" its decision against them to their failure to prove *scienter*. In support of this claim, they point to "one particular sentence" toward the end of the oral findings, in which Judge Collins observed: "Given the absence of fraud and intent to deceive and the other factors I've mentioned here today, I believe it would be unfair and unjust to grant the declaratory and injunctive relief sought by the plaintiffs." But the shareholders overstate the significance of this reference to *scienter*. For it had nothing to do with the superior court's application of *Brown v. Ward's* objective materiality test; instead, by its own terms, the comment focused exclusively on Judge Collins's alternative basis for ruling: as we have described above, the judge's alternative ruling addressed the remedies requested in the lawsuit, concluding that they would be inappropriate *even if* the plaintiffs had proved a material misrepresentation. As Judge Collins correctly recognized, the plaintiffs' request for equitable remedies necessarily raised equitable issues on which *scienter* had direct bearing. In context, then, Judge Collins's comment simply confirms her understanding and correct application of *Brown v. Ward's* objective test of materiality. We thus find no merit in the shareholders' claims that Judge Collins wrongly imposed a *scienter* requirement in deciding the issue of materiality.

## 2. Materiality of Huna Totem's omissions

■ In addition to claiming that the trial court applied the wrong legal test of materiality, the shareholders maintain that the proxy materials are materially false and misleading under the right standard.

As previously noted,[13] after hearing the testimony at trial and reviewing the various documents shareholders had received regarding the trust, Judge Collins determined that, while some of the documents were ambiguous, their ambiguities were not material. Specifically, Judge Collins found that Huna Totem's July 1994 proxy solicitation gave shareholders a complete and accurate picture of the periodic review process: "[T]he proxy statement and the full text of the settlement trust that was submitted to the shareholders is neither overly simplified [n]or unclear." Given the broad distribution and ready availability of this information, the court concluded, "[t]he total mix of materials submitted to the Huna Totem shareholders was essentially accurate if to some degree overly simplified"; and in the court's view, any ambiguities or omissions in the May 1994 preliminary information packet or in the directors' post-solicitation oral presentations were immaterial under *Brown v. Ward's* objective test, which defines a misleading or false statement as " 'material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.' "[14]

In propounding a contrary view on appeal, the shareholders concentrate primarily on the incompleteness of the preliminary information distributed in May 1994, insisting that the confusion generated by this information sowed a lasting seed of ambiguity that violated the "clear statement rule" and Huna Totem's duties of disclosure, completeness and candor; omitted facts "so obviously important" to individual shareholders as to be material as a matter of law; and should therefore be resolved in favor of the shareholders under ordinary rules of contract interpretation.

■ But the shareholders' narrow focus on the trial court's finding of an ambiguity in Huna Totem's preliminary information impermissibly views that information in isolation, mistakenly disregarding the need to decide the materiality of a particular omission in light of the totality of available information. For as we have already observed, the Alaska Securities Act expressly requires us to determine the materiality of a statement's omissions contextually, rather than in isolation, by considering whether the statement "omit[s] to state a material fact necessary in order to make the statement[ ] made, *in the light of the circumstances under which [it is] made*, not misleading."[15] Or as Judge Collins more simply phrased it, the pertinent inquiry here was whether *"[t]he total mix* of materials submitted to the Huna Totem shareholders was essentially accurate." (Emphasis added.)

Here, no matter how sketchy the corporation's initial description of its proposed settlement trust might seem, the uncontroverted facts establish that Huna Totem's preliminary packet of information was labeled as a "brief introduction" to the proposed settlement trust; it expressly warned the shareholders of its own incompleteness and promised more information to follow. Keeping this promise, Huna Totem delivered the proxy solicitation itself—the most crucial document—which provided each shareholder a complete and accurate summary of the proposed trust's review process, as well as a copy of the entire settlement trust document.

Applying *Brown v. Ward's* objective test to the total mix of available information, as the securities act requires, we conclude, as Judge Collins did, that a reasonable shareholder considering the information actually provided would not have been likely to find the information omitted from Huna Totem's preliminary packet and post-solicitation oral communications to be important in deciding how to vote.[16] We thus affirm the superior court's materiality ruling.[17]

---

**13.** *See* note 4, above.

**14.** *Brown*, 593 P.2d at 251 (quoting *TSC Indus.*, 426 U.S. at 449, 96 S.Ct. 2126).

**15.** AS 45.55.160 (emphasis added).

**16.** *See Brown*, 593 P.2d at 251 (quoting *TSC Indus.*, 426 U.S. at 449, 96 S.Ct. 2126).

**17.** Pointing to a pattern of similar descriptions—some accurate, many incomplete—in various communications occurring between the time of the settlement trust's approval in 1994 and the first five-year review in 2000, the shareholders maintain that the continuing ambiguity and inconsistency of these statements relates back to the earlier communications, somehow confirm-

### 3. Appropriateness of shareholders' proposed remedies

Finally, the shareholders argue that Judge Collins erred in her alternative ruling rejecting as inequitable their proposed remedies of declaratory relief, injunctive relief, and nominal damages. Because the superior court issued its alternative ruling on the assumption that Huna Totem's proxy materials might ultimately be found to be materially misleading—an eventuality that has not materialized—we need not consider the superior court's alternative ground for decision.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

MATTHEWS, Justice, not participating.

ing their originally misleading character. The shareholders further maintain that each of these post–1994 repetitions of the 1994 promise of a shareholder vote amounted to a new contract, creating a new cause of action. Moreover, the shareholders seem to argue, by violating various common law rules implicit in *Brown v. Ward*—a corporation's duty of disclosure, its duty of completeness, its duty of candor, and its duty of good faith and fair dealing—Huna Totem's original and subsequent materials became independently actionable. But these common law duties are largely incorporated in Alaska's statutory standards governing material misrepresentations. Thus, the common law claims depend on the shareholders' initial premise that Huna Totem's May 1994 preliminary statement was materially misleading; they add little to the statutory claims and fail to survive our rejection of the shareholders' arguments on *scienter* and materiality.