Gregory O. BROWN and Karl H. Greenewald, Jr., individually and derivatively on behalf of Huna Totem Corporation, Appellants,

v.

Albert W. DICK, Bertha M. Franulovich, Sam M. Hanlon, Jr., Ernest W. Hillman, Jr., Ernest Jack, William O. "Ozzie" Sheakley, and Peter D. Hocson, individually and in their capacity as shareholders, officers and directors of Huna Totem Corporation, Appellees.

No. S–10976.

Supreme Court of Alaska.

Jan. 21, 2005.

Rehearing Granted in part March 15, 2005.

Fred W. Triem, Petersburg, for Appellants.

Barbra Zan Nault, Bankston, Gronning, O'Hara, Sedor, Mills, Givens & Heaphey, P.C., Anchorage, Bruce E. Gagnon, Atkinson, Conway & Gagnon, Anchorage, and Daniel G. Bruce, Baxter, Bruce & Sullivan, P.C., Juneau, for Appellees.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

The Huna Totem Corporation proposed a land exchange that became controversial and sparked a struggle for control of Huna's board of directors; the struggle ended in an unsuccessful superior court action against individual members of Huna's board. The pivotal issue on appeal is whether the superior court should have awarded nominal damages against the directors for violating two proxy disclosure requirements. We hold that, because the violations occurred inadvertently as a result of the board's good-faith reliance on expert advice and thus did not amount to a fiduciary breach, the superior court properly denied nominal damages.

## II. FACTS AND PROCEEDINGS

In early 1997 the Huna Totem Corporation's board of directors unanimously voted to exchange corporate land for land held by the United States Forest Service. The proposed exchange eventually became controversial. Some dissident Huna shareholders led by Gregory Brown and Karl Greenewald, Jr., (collectively, Brown) organized a group named Shareholders for Shareholders (SFS) to recall the existing board of directors and amend Huna's bylaws to block the proposed exchange. Huna and SFS issued competing proxies before the corporation's May 1999 annual meeting. Both organizations subsequently complained to the Alaska Department of Community and Economic Development's Division of Banking, Securities, and Corporations (the Division), alleging numerous proxy violations and irregularities.

Huna held its annual meeting and elections soon after the Division received these complaints; the SFS recall and proposed bylaw amendments received insufficient votes to prevail. Brown then filed suit in superior court against Huna's CEO and individual members of its board of directors, alleging violations similar to those charged in the earlier complaints before the Division and seeking injunctive relief, a declaratory judgment, compensatory and punitive damages, and an award of costs and attorney's fees.

Because the issues in the superior court case paralleled those raised in SFS's complaint to the Division, the court ordered the civil case to be stayed until the Division decided the administrative action. The court indicated that either party could then reactivate the superior court case by appealing the Division's ruling or seeking direct resolution of any issues that the Division left undecided. In issuing this order, the superior court relied on *Wade Oilfield Service Co. v. Providence Washington Insurance Co. of Alaska.*[1] There, we considered an analogous situation and held that when a superior court case raises regulatory issues involving agency expertise that are simultaneously raised in a pending administrative proceeding, the doctrine of primary jurisdiction allows the court to stay the judicial action and retain jurisdiction until the administrative proceeding is finally resolved, after which either party could seek review of the agency's ruling under applicable law governing administrative

---

1. 759 P.2d 1302, 1305 (Alaska 1988).

appeals.[2] SFS did not contest the stay pending completion of the Division's proceedings.

After the superior court issued its stay, the Division investigated the parties' complaints and entered a temporary cease and desist order against Huna, as well as a notice of intent to levy fines against the company and a notice of right to a hearing; these orders provisionally found the company guilty of four separate proxy violations, directed it to cease and desist, announced that it would be subject to fines totaling $10,000, and notified it that these temporary provisions would become the Division's final order if Huna failed to request a hearing within fifteen days.

Huna requested a hearing to contest the temporary order's findings, and an administrative law judge was appointed to hear the proceeding. The Division and Huna subsequently entered into a consent agreement that resolved the cease and desist order's charges and set out various findings.

As to two of the four most prominent violations charged by the temporary cease and desist order—failing to spell out SFS's proposed amendment in Huna's proxy solicitation materials and failing to provide a box in the proxy for shareholders to specify their voting preference—the consent decree set out the Division's finding that Huna had committed these violations but had acted inadvertently. As to the cease and desist order's two other prominent charges—alleged misstatements in two election flyers (the "Know the Facts" and "Code of Conduct" flyers)—the consent decree expressly provided that, in the interest of settlement, the Division agreed not to pursue these allegations. And as to all other alleged violations, the decree stated that the Division found these allegations to be either factually unsupported or insufficiently material to warrant further action. The consent decree specifically declared itself to be "a final settlement of

Huna's liability"; it further specified that it would "remain in full force and effect and be binding until it is amended or vacated by further order of the Administrator or the mutual agreement of the parties."

After the consent decree was entered, Brown moved to reopen the dormant superior court case and asked for judicial notice of the consent decree and the Division's findings of fact. The superior court granted the motion in part. While declining to take notice of the Division's findings of fact, the court lifted the stay, directed the civil action to proceed, and took judicial notice of the decree as the Division's final decision, ruling that Brown had exhausted his administrative remedies.

As already mentioned, the court's earlier order staying the civil case stated that either party would be allowed to contest the Division's final decision by following the applicable procedures for pursuing an administrative appeal to the superior court. The order had also established that the superior court would directly resolve any issues left unresolved in the administrative proceeding.

Brown did not contest the superior court's order treating the consent decree as the Division's final decision. Nor did either party seek to appeal any aspect of that decision.[3] The superior court thus set the matter for trial to resolve issues left undecided by the Division's consent decree.

By then, Brown had dropped the plaintiffs' claim for injunctive relief and compensatory damages. The only remedy still sought was a judgment declaring that the individual defendants had breached their fiduciary duty and an award of nominal damages against them based on that breach. Given this procedural setting, the superior court viewed the consent decree as leaving four issues to be decided at trial. The first two issues focused

2. *Id.*

3. The procedures governing administrative appeals to the superior court from a final order of the Division are set out in AS 45.55.940 and Appellate Rules 601–612. Alaska Statute 45.55.940(a) provides, in relevant part: "A person aggrieved by a final order of the administrator may obtain a review of the order in the superior court by filing, in accordance with the

Rules of Appellate Procedure, a notice of appeal." Appellate Rule 601(a) generally authorizes the superior court to hear an appeal from the decision of an administrative agency, and Appellate Rule 602(a)(2) specifies that the administrative appeal must be filed "within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant."

on the consent decree's finding that Huna had inadvertently committed two proxy violations; the court sought to determine whether either violation amounted to a fiduciary breach warranting an award of nominal damages. The two remaining issues focused on the two allegedly misleading proxy flyers—the "Know the Facts" flyer and the "Code of Conduct" flyer—that the consent decree had expressly declined to address.

Shortly before trial, Brown asked the superior court to take judicial notice of the findings of intentional and knowing proxy violations set out in the Division's temporary cease and desist order and to treat those findings as continuing to be valid and binding. But while agreeing to take notice of the temporary order's existence, the court declined to regard its findings as having any continuing force and effect. At trial, the defendants presented evidence to bolster the consent decree's finding that the two proxy violations resulted from inadvertent and good-faith actions; they also sought to show that the disputed proxy flyers were not materially misleading.

After a two-day trial the superior court entered extensive oral findings of fact and conclusions of law on the record, and also issued a thorough written decision. The court ruled in favor of the defendants, concluding that Brown had failed to prove a fiduciary breach warranting nominal damages.

Specifically, regarding the two inadvertent proxy violations described in the Division's consent decree, the superior court found that Huna's directors and CEO had acted in good-faith reliance on expert advice that they had received from competent, unbiased legal and securities counsel. The court concluded that no breach of fiduciary duties occurred under these circumstances. Relying on case law from Delaware and Arizona, moreover, the court further ruled that it would be inappropriate to award nominal damages for these inadvertent and good-faith errors—particularly because Brown had failed to allege or

prove that the plaintiffs had actually suffered any compensable economic harm.

Turning next to the two disputed proxy flyers, the court evaluated the totality of the circumstances surrounding their preparation and issuance. As to the "Code of Conduct" flyer, the court expressly found that testimony offered at trial by the plaintiffs lacked credibility; while noting that the flyer itself could have been "more complete," the court found that it was not materially misleading when viewed in context. Regarding the "Know the Facts" flyer, the court similarly observed that, while it might have been clearer, the flyer did not misstate or omit material facts and would likely have been understood as a fair response to statements by SFS members. And in any event, the court concluded, the flyer did not amount to a fiduciary breach and so would not support Brown's request for nominal damages. Based on this ruling, the court entered final judgment against Brown.

Brown appeals.[4]

## III. DISCUSSION

On appeal, Brown raises several intertwined claims of error and generally accuses the defendants of flagrant misconduct: "The six dominant directors and their CEO used an illegal scheme to steal a corporate election—They put their hands over the ballot box and prevented shareholders from voting in the directors' recall—The directors' obvious motive was *entrenchment.*" But these claims tilt the facts and the law in Brown's direction: they largely ignore the superior court's careful findings, and draw scant support from the record.

### A. Proxy Violations

Brown argues at length that the defendants knowingly committed multiple violations of corporate and securities law by neglecting to set out the SFS initiative in detail in its proxy materials and by failing to provide boxes on the proxy for shareholders to mark their voting preferences. Yet the defendants do not dispute that these circum-

---

4. Brown secured new counsel on appeal and is not represented by the same counsel who handled his case below.

stances amounted to proxy violations. They emphasize instead that the Division's consent decree and the superior court's decision expressly found the violations to be inadvertent errors resulting from the defendants' good-faith reliance on advice they obtained from a qualified expert on proxy solicitations.

■ We agree with the defendants' position that the nature and scope of these violations is fixed by the Division's findings in the consent decree, which Brown failed to appeal, and by the superior court's findings, which Brown has not persuasively refuted.

The Division's finding of inadvertence was incorporated in the consent decree, which the superior court specifically characterized as a final administrative determination from which either party could appeal to the superior court. Brown asserts in his reply brief that he could not have appealed from the consent decree. Yet the superior court's express orders to the contrary belie this conclusory assertion. The court's order staying the case specifically decided that the Division's final determination would be subject to an administrative appeal under the approach described in *Wade Oilfield Service Co. v. Providence Washington Ins. Co. of Alaska.*[5] And the court's subsequent order dissolving the stay expressly deemed the consent decree to be the Division's final decision. Brown challenges neither order, which together unambiguously required him to appeal any disputed finding embodied in the consent decree. Because his failure to appeal the point to the superior court precluded the preparation of an administrative record and prevented that court from reviewing the Division's finding that the violations amounted to inadvertent technical errors, Brown is now bound by this characterization and is barred from advancing a contrary argument here.

Brown nonetheless maintains that the consent decree was merely a settlement agreement to dismiss the Division's charges, and so could not contain any meaningful findings. The Division's true findings, according to Brown, are located in its earlier cease and desist order; and these findings continue to

be binding, Brown insists, because they have never been vacated. Since the cease and desist order's findings characterize the defendants' violations as knowing or intentional actions that amount to fiduciary breaches, Brown contends, these findings bar the defendants from claiming inadvertence and good-faith reliance.

On its face, however, the cease and desist order was designated as a temporary order. Moreover, its findings were merely preliminary: they were provisionally slated to become final and binding only if Huna failed to request a hearing. As it happened, Huna did file a timely request for a hearing, so the findings remained mere allegations. And although the ensuing consent decree undeniably reflected an amicable settlement, it hardly resulted in an outright dismissal of the administrative proceeding. Instead, the decree required Huna to relinquish its right to dispute the charges of committing two proxy violations and called for it to agree to pay the Division a substantial sum as costs of investigation. In return, the Division set out formal and final findings that Huna had committed two proxy violations that were inadvertent; it agreed to drop the cease and desist order's allegations stemming from Huna's two proxy flyers; and it found all other alleged irregularities to be factually unsupported or inconsequential.

As the defendants correctly observe, these findings by the Division superseded, and thus effectively vacated, the temporary cease and desist order's prior findings. The superior court properly viewed the consent decree as incorporating the Division's formal and binding findings.

■ Brown separately asserts that the superior court erred in excusing the defendants of fiduciary breaches even if they acted inadvertently and out of good-faith reliance. Because intentional misconduct or bad faith is unnecessary for a violation of securities laws,[6] Brown reasons, the superior court's reliance on inadvertence and good faith erroneously required him to prove *scienter.* But this argument conflates proof of a violation

---

**5.** 759 P.2d 1302, 1305 (Alaska 1988).

**6.** *See, e.g., Skaflestad v. Huna Totem Corp.,* 76 P.3d 391, 396 (Alaska 2003).

with proof of a corporate director's or officer's individual liability for fiduciary breach: while good faith and inadvertence may be irrelevant as to the former, this is not necessarily so as to the latter. As the superior court tacitly recognized, AS 10.06.450(b) controls the issue for corporate directors, requiring directors to perform their duties

> in good faith ... and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances. [Except when a director knows that reliance is unwarranted], a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by ... counsel, public accountants, or other persons as to matters that the director reasonably believes to be within the person's professional or expert competence.[7]

Corporate officers are governed by a similar provision set out in AS 10.06.483. The superior court thus properly took stock of inadvertence and good-faith reliance in evaluating the defendants' individual liability for fiduciary breach.[8]

Brown insists that these protections do not extend to entrenchment cases like this one, where directors have breached their fiduciary duty of loyalty by impairing the shareholders' voting rights. He cites a United States District Court case from Nevada, *Shoen v. AMERCO*,[9] as a "useful model for the rule needed here in Alaska." But Brown overstates *Shoen's* ruling, which seems to preclude good-faith reliance on experts as a defense in shareholder voting cases only when the action in question intentionally impairs the shareholder vote:

> [W]hile "the reasonable exercise of good faith and due care generally validates, in

equity, the exercise of legal authority *even if* the act" has the *effect* of entrenching incumbent board members, "action designed for the *primary purpose* of interfering with the effectiveness of a stockholder vote" is subject to a standard of review more demanding than the business judgment rule. In such a case, the board bears "the heavy burden of demonstrating a compelling justification for such action." It is this concern "for credible corporate democracy[ ] [that] underlies those cases that strike down board action that sets or moves an annual meeting date upon a finding that such action was *intended* to thwart a shareholder group from effectively mounting an election campaign." [10]

Here, despite Brown's arguments to the contrary, the Division's finding of inadvertence precludes any contention that the proxy violations were "intended to thwart [SFS] from effectively mounting an election campaign." [11]

## B. Proxy Flyers

Brown briefly advances a similar claim that the "Code of Conduct" and "Know the Facts" proxy flyers violated the law by impermissibly misleading Huna shareholders and disparaging SFS candidates. In raising this claim, Brown avoids directly addressing the superior court's decision, which concluded that neither flyer materially violated applicable regulations. Brown does not contend that the factual findings underlying these conclusions were unsupported by the evidence at trial; nor does he specify how the court's reasoning might be legally flawed. Instead, Brown simply asserts that the temporary cease and desist order's findings conclusively establish that the defendants intentionally committed multiple proxy violations.[12]

---

7. AS 10.06.450(b)(1), (c).

8. *Cf. Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1091–92 (Alaska 2002).

9. 885 F.Supp. 1332, 1340–41 (D.Nev.1994).

10. *Id.* at 1341 (quoting *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 659, 661, 659 n. 2 (Del.Ch.1988)).

11. *Id.*

12. Brown attributes added significance to findings set out in a decision letter that the Division sent to Brown's attorney shortly before issuing the cease and desist order. But the decision letter merely advised Brown that the temporary cease and desist order was about to be issued, and reiterated the findings contained in that order. Because the findings in the letter simply mirrored those in the forthcoming order, the

As already discussed above, however, the temporary cease and desist order's findings were superseded by the subsequent consent decree, which expressly left the proxy-flyer issues unresolved. The superior court heard evidence on these issues at trial and resolved them in its decision. Brown has failed to demonstrate that the superior court erred on this point.

## C. Other Alleged Violations

Brown salts his brief with various allegations of additional proxy violations. He argues, for example, that Huna improperly "put its thumb on the election scales by paying for proxies." He suggests that the defendants improperly spent corporate funds and resources to influence the election. He also claims that they exacerbated the situation by delaying Huna's distribution of required proxy information. But the consent decree implicitly addressed these points by expressly providing that "all other allegations were found not to be supported by the facts or not to rise to the level of materiality required for administrative action." Given Brown's failure to appeal this finding to the superior court, it appears to control these miscellaneous points.[13]

## D. Nominal Damages

Last, Brown insists that the superior court erred in failing to hold the defendants liable for nominal damages, even if it properly found that their violations reflected inadvertent and good-faith reliance, and even though no actual harm was alleged or proved. According to Brown, nominal damages are appropriate and should be awarded as a matter of course for any proxy violation in a shareholder election case. Brown cites an array of Delaware cases[14] and the United States District Court's ruling in Shoen v. AMERCO[15]

to support his proposal to adopt a per se nominal damages rule.

■ We find Brown's argument unpersuasive, since we do not read the authorities he cites to create a blanket rule requiring courts to award nominal damages against individual directors and officers for innocent proxy violations in shareholder election contests. The defendants persuasively argue that the Delaware cases only approve nominal damages when actual economic harm is proved or apparent. Furthermore, as already indicated, Shoen suggests that director-liability in such cases for good-faith or innocent violations should be limited to violations stemming from conduct designed to restrict shareholders' voting rights. And a more recent decision by the Arizona Court of Appeals involving the same parties and controversy at issue in Shoen flatly held that nominal damages may not be awarded without proof that actual economic harm has occurred.[16]

■ In the present case, we see no need to define the permissible outer limits for awarding nominal damages in situations involving director entrenchment; instead, we assume for the sake of deciding the specific issue before us that the superior court had discretion to award nominal damages. Here, the court carefully considered all relevant evidence concerning the inadvertent nature of the proxy violations at issue and the defendants' good-faith reliance on competent expert advice; the court likewise considered the absence of any evidence of actual economic harm and the lack of any claim for injunctive relief. After properly taking account of Alaska's statutory business judgment provisions and thoughtfully reviewing the relevant authorities in other jurisdictions, the superior court exercised its discretion by

letter could have no independent evidentiary value.

13. The lack of an administrative record prevents us from confirming that these points were actually included among the "other allegations" considered by the Division. But even if they were not, these miscellaneous claims would be barred by Brown's failure to raise them as issues remaining for trial after the superior court revived the original civil action.

14. See, e.g., Malone v. Brincat, 722 A.2d 5, 12 (Del.1998); Loudon v. Archer–Daniels–Midland Co., 700 A.2d 135, 142 & nn. 26–27 (Del.1998).

15. 885 F.Supp. 1332, 1341 (D.Nev.1994).

16. AMERCO v. Shoen, 184 Ariz. 150, 907 P.2d 536, 540–42 (Ariz.App.1995).

declining to award nominal damages. Having carefully considered the totality of the record and reviewed the cited authorities, we hold that Brown has failed to establish that the superior court abused its discretion.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

MATTHEWS, Justice, not participating.