**Herbert WOLF et al., Appellant,**

v.

**ALASKA STATE HOUSING AUTHORITY,
a public corporation, Appellee.**

**No. 1708.**

Supreme Court of Alaska.

Sept. 14, 1973.

William H. Fuld, Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellant.

Donna Page, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR and ERWIN, JJ.

RABINOWITZ, Chief Justice.

The issue in this case arises out of a condemnation proceeding in which the appellee, Alaska State Housing Authority,[1] acquired a fee simple interest in certain property located in Juneau belonging to the appellant, Herbert Wolf. The property was condemned by ASHA under authority of the Alaska Slum Clearance and Redevelopment Act [2] for the purpose of carrying out a program of urban renewal in Juneau.

Prior to the condemnation of Wolf's property, ASHA submitted to the Juneau City Council the Harborview Urban Renewal Plan, a detailed plan for the urban renewal of an area of Juneau in which Wolf's former property is situated. After consideration of the ASHA proposal, the Council, on October 6, 1967, passed an ordinance [3] declaring the area in question to "be a slum, blighted . . . and . . . in need of redevelopment," and approved the Harborview Urban Renewal Plan. On January 16, 1968, upon petition of certain qualified voters in Juneau, a referendum on the ordinance was held, and the ordinance was rejected.[4] On October 15, 1969, ASHA initiated its suit to condemn the Wolf property.

Wolf asserted in his answer to the complaint that ASHA had no authority to exercise eminent domain powers for the purpose of the urban renewal project. Specifically, he contended that since the ordi-

1. The Alaska State Housing Authority will hereinafter be referred to as "ASHA".

2. Title 18, Article 3, Alaska Statutes; AS 18.55.480–.960.

3. Ordinance No. 572, City of Juneau.

4. In an election held on April 2, 1968, another election on the question was had and the voters of Juneau approved the Harborview Urban Renewal Project Ordinance.

nance endorsing the project was rejected by the January 16, 1968 referendum, ASHA had no authority to acquire property for the project.

Both parties moved for judgment on the pleadings.[5] The superior court held that the ordinance approving the urban renewal project was exempt from referendum "because the ordinance in this case tended to be local or special legislation . . . and because [it] was simply an administrative ordinance putting into execution policies previously determined by act of a superior legislative body, the state legislature." Thus, the court concluded that ASHA could lawfully exercise the power of eminent domain, granted ASHA's motion for summary judgment, and entered a Judgment in Condemnation and Final Order of Condemnation. Wolf appeals from the judgment and final order of condemnation.

We first note that following judgment and while this case was pending appeal, appellant Herbert Wolf died, and his estate accepted the award of just compensation decreed by the superior court. Ordinarily, acceptance of the award of just compensation would render moot the pending appeal.[6] However, there were several other companion cases involving persons whose property, like Wolf's, was taken by ASHA for the Harborview Urban Renewal Project. Two of these individuals have appealed from judgments of condemnation by the superior court, and specify the same issue on appeal as those presented by the Wolf case.[7] The parties to these appeals have agreed to be bound by our decision based on the arguments presented by ASHA and Wolf in the case at bar. Therefore we decline to dismiss the instant appeal as moot on the grounds that Wolf's estate accepted the amount of just compensation awarded by the court.

ASHA may not acquire land for a redevelopment project until the governing body of the municipality has approved the redevelopment plan.[8] Although ASHA may acquire real property by power of eminent domain "within the boundaries of the redevelopment project or for its purposes under [AS 18.55.480—960]," [9] ASHA may not conduct business, or exercise its powers—including eminent domain—until the governing body of the municipality approves by resolution the exercise in the municipality of [ASHA's] powers, functions and duties . . . ." [10] The Juneau City Council gave ASHA its approval by passage of Ordinance No. 572. The question presented by this appeal is whether the January 16, 1968 referendum, which rejected Ordinance No. 572, invalidated the Council's approval of ASHA's exercise of its "powers, functions and duties" in furtherance of the redevelopment project.

AS 29.65.016(1) provided: [11]

The initiative and referendum shall be provided for in the charter of home rule charter cities or boroughs subject to the restriction of § 7, art. XI of the Alaska Constitution.

Article XI, § 7 of the Alaska Constitution in turn provides:

The initiative shall not be used to dedicate revenues make or repeal appropriations, create courts, define the jurisdic-

---

5. Since the parties presented matters outside the pleadings for consideration by the court, the motion was treated as one for summary judgment. Alaska Rule of Civil Procedure 12(c).

6. *See* Ogden v. State, 395 P.2d 371, 372 (Alaska 1964); Graham v. City of Anchorage, 364 P.2d 57, 59 (Alaska 1961).

7. Theresa Bell, et al., v. Alaska State Housing Authority, Supreme Court File No. 1994; Celesta N. McGee v. Alaska State Housing Authority, Supreme Court File No. 1993.

8. AS 18.55.530(a).

9. AS 18.55.550(a).

10. AS 18.55.510(a).

11. Since the initiation of this action, AS 29.-65.016(1) has been repealed and replaced by AS 29.28.060 which reads:
    The powers of initiative and referendum are reserved to the residents of municipalities except the powers do not extend to matters restricted by § 7, art. XI, of the state constitution.

tion of courts or prescribe their rules or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety.

Article XI, Section 11–1, of the Juneau City Charter provides in relevant part:

> The qualified voters of the city, by the referendum, may approve or reject any ordinance passed by the council except as otherwise provided in this section.

> . . . [S]pecial ordinances . . . shall not be subject to either the initiative or the referendum. [Emphasis added.]

Appellant argues that Ordinance No. 572 is "general" and not "special" in its operation, because the urban renewal project approved by the Council would "operate upon the entire community by improving its general health and by demanding services of its citizens." From that he concludes that the ordinance was a proper matter for referendum. Appellee counters that the urban renewal project was concerned with only a portion of the area and population of Juneau, and therefore was a special ordinance not subject to the referendum. Appellee, in addition, contends that the ordinance was administrative rather than legislative in nature, and therefore not within the scope of matters which may be submitted to referendum. Specifically, appellee asserts that the ordinance simply serves to put into execution the State Slum Clearance and Redevelopment Act[12] by which the State Legislature delegated to carry out the purposes of that Act.

It is not necessary, however, for us to decide whether the ordinance approving the proposed urban renewal project was a proper subject for referendum. Following rejection of the ordinance by referendum, the voters of Juneau approved Ordinance No. 572 by initiative on April 2, 1968. The appellant has not challenged the validity of this second election.

We are of the opinion that if the subject matter of the ordinance were properly subject to popular review, then it also would be a proper subject for popular initiative.[13] If the matter was a proper matter for referendum, then the later adoption of the ordinance by popular initiative provided ASHA with the necessary approval to exercise the power of eminent domain for the renewal project. Of course, if the Harborview Urban Renewal Project ordinance was not an appropriate matter for referendum—either because it is a local or special ordinance, or because the ordinance related to an administrative matter—then the referendum could not have had the effect of repealing the ordinance, and ASHA was fully empowered to exercise the powers of eminent domain under authority of the City Council. Consequently, even if we were to endorse appellant's position that the urban renewal ordinance was a proper subject for electoral review, that conclusion would have no practical legal effect on the ultimate legal question of whether ASHA had the authority to take property by condemnation for the project. As the United States Supreme Court declared in Mills v. Green,[14]

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

Affirmed.

BOOCHEVER and FITZGERALD, JJ., not participating.

12. AS 18.55.480 et seq.

13. Art. XI, § 7, of the Alaska Constitution expressly exempts "local or special legislation" from both the initiative and the referendum. Similarly, the power of both initiative and referendum is restricted to legislative ordinances, and does not extend to administrative measures. E. McQuillan, The Law of Municipal Corporations, § 16.55 (3rd ed. 1969).

14. 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895).