**ALASKANS FOR EFFICIENT GOVERN-MENT, INC., an Alaskan nonprofit corporation, Appellant,**

v.

**Tony KNOWLES, in his official capacity as Governor of Alaska, Appellee.**

No. S–10731.

Supreme Court of Alaska.

May 14, 2004.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

Sarah J. Felix, Assistant Attorney General, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Alaska Statute 44.06.060 requires the legislature to appoint a FRANK Commission to determine the costs required by initiatives or legislative enactments authorizing relocation of any functions of state government. We consider here whether—as Alaskans for Efficient Government, Inc. contends—the statute requires appointment of the commission when a relocation initiative is placed on the ballot, or—as the superior court held—only when the voters have approved a relocation initiative. Because we read the statute to require appointment of a FRANK Commission only after the voters have enacted a relocation initiative and because we also conclude that the statute does not violate the Alaska constitution, we affirm. Given our ruling on the merits of the appeal, we do not reach the governor's argument that laches bars Alaskans for Efficient Government, Inc.'s lawsuit.

## II. FACTS AND PROCEEDINGS

In July 2001 the lieutenant governor of Alaska certified a voter initiative application proposing relocation of the Alaska legislature. In March 2002 the lieutenant governor certified the initiative for the November 5, 2002 general election ballot. The ballot initiative, 01 CHGE, proposed (1) moving legislative sessions from Juneau to the Matanuska–Susitna Borough, and (2) repealing the requirement that a FRANK Commission be created to determine the costs of relocating the legislature. Notwithstanding requests for creation of a FRANK Commission to determine costs of a relocation of the legislature, no FRANK Commission was appointed before the November 5, 2002 general election. The voters defeated initiative 01 CHGE at the November 5, 2002 general election.

Alaskans for Efficient Government, Inc., (AFEG) filed three lawsuits concerning initiative 01 CHGE. The first concerned the ballot language. The second concerned the creation of a FRANK Commission. The third was an election contest filed by AFEG and twenty qualified voters following the election.

The second lawsuit is the one now before us.

AFEG filed its first lawsuit after the initiative application was certified. The complaint named as defendant then—Governor Tony Knowles in his official capacity. The first lawsuit addressed the ballot language and AFEG did not initially claim in that lawsuit that a FRANK Commission should be created. AFEG eventually raised that issue in the first lawsuit when it moved for summary judgment. AFEG's motion asked the superior court to order the creation of a FRANK Commission. The superior court ruled on the ballot language issue, but refused to rule on the issue regarding creation of a FRANK Commission. The superior court dismissed AFEG's FRANK Commission claim without prejudice.

AFEG, acting through its attorney, wrote the governor, speaker of the Alaska house, and president of the Alaska senate in February 2002 requesting the appointment of a FRANK Commission in time to present its report before the November 2002 election. The regular legislative session ended in May 2002.

AFEG filed its complaint in the second lawsuit in June 2002, after the regular legislative session had ended. AFEG there alleged that AS 44.06.050–.060 required appointment of a FRANK Commission for determination of relocation costs before voters were to vote on the relocation initiative. The governor responded in that lawsuit

that the statute did not authorize creation of a FRANK Commission until after a relocation law or initiative had been enacted into law. The governor argued that if a proposed relocation were to be enacted, a second election would be held to allow voters to approve or reject the bonds required to pay for the relocation.

AFEG asked the superior court for an injunction and declaratory relief. After a special session of the legislature ended, AFEG dropped its request for an injunction and argued for a declaratory judgment establishing when the statute requires appointment of a FRANK Commission. Superior Court Judge Morgan Christen denied AFEG's motion for injunction and declaratory relief. The superior court's eleven-page memorandum order explained the court's reasoning, and held that

> AS 44.06.060 did not require the appointment of a FRANK Commission after Plaintiff's ballot initiative was certified by the Lieutenant Governor. Rather, the current statutory scheme calls for the appointment of a FRANK Commission to investigate the total cost of the proposed move only if voters first pass the initiative to move the legislature. The present statutory scheme contemplates that the Commission's cost information is then to be presented to the voters, so that they may decide, in a separate election, whether the cost of the move should be authorized.

AFEG's appeal asks us to reverse the court's order and remand with instructions that initiative 01 CHGE be placed on the ballot again in the 2004 general election, and to require that a FRANK Commission be appointed and that it be required to determine before the election the relocation costs.

## III. DISCUSSION

### A. Standard of Review

■ We review de novo questions of law, including the interpretation of a statute, adopting the rule of law most persuasive in light of precedent, reason, and policy.[1] Rather than rigidly apply a plain meaning rule of statutory interpretation, we favor a "sliding scale approach" under which " 'the plainer the language of the statute, the more convincing contrary legislative history must be.' "[2]

### B. Alaska Statutes 44.06.050–.060 Require the Governor To Appoint the FRANK Commission Only After Voters Approve a Relocation Initiative.

■ The question we must answer is whether Alaska law requires the governor to appoint the FRANK Commission before or after voters enact a relocation measure. The superior court held that AS 44.06.060 requires the governor to appoint the FRANK Commission only if voters first pass the initiative to move the legislature. AFEG argues that this holding was in error; AFEG asserts that AS 44.06.050–.060 require that the FRANK Commission be appointed to determine costs before voters vote on the relocation initiative.

AFEG argues that the purpose and language of the statutes establish that the FRANK Commission should have been appointed before the November 5, 2002 election. The governor responds that the statutes do not authorize creation of the FRANK Commission until after a relocation law or initiative has been enacted into law. If a proposed relocation were to be enacted, then a second election would be held to allow voters to approve or reject the bonds required to pay for the relocation. The governor argues that language, history, and policy support his interpretation of AS 44.06.050–.060.

Alaska Statute 44.06.060 provides for the establishment of a FRANK Commission "to determine the costs required by initiatives or legislative enactments authorizing relocation of any of the present functions of state government."[3] (Neither party contends that

---

1. *Kodiak Island Borough v. Roe,* 63 P.3d 1009, 1012 n. 6 (Alaska 2003).

2. *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1019 (Alaska 1998) (quoting *Chokwak v. Worley,* 912 P.2d 1248, 1251 (Alaska 1996)).

3. AS 44.06.060 states:

the commission is intended to be a standing commission. We assume the statute calls for the establishment of a commission on an ad hoc basis.) AFEG argues that the word "initiatives" as it is used in AS 44.06.060 refers to propositions that the lieutenant governor has certified and placed on the ballot. The governor argues that "initiatives" in this statute refers to propositions that the voters have enacted into law.

The word "initiative" has several possible meanings. Black's Law Dictionary[4] defines "initiative" as "[a]n electoral *process* by which a percentage of voters can propose legislation and compel a vote on it by the legislature or by the full electorate."[5] Opinions of this court[6] have used the word "initiative" to refer to: proposals that have not yet been approved by the lieutenant governor and placed on the ballot;[7] initiatives enacted into law;[8] and the initiative process in general.[9] Indeed, both parties in this case refer to AS 44.06.050–.060—an enacted law— as the "FRANK Initiative."

We construe words according to their common—or, when applicable, their technical—meanings.[10] The word "initiative" in isolation can appropriately refer to legislation at many different stages of the initiative process, as well as to the process of direct voter legislation itself. Because dictionary authors, proponents of initiatives, government officials, and courts use the word "initiative" to refer to the products at many stages of the process—including proposals before they are placed on the ballot as well as adopted initiatives for years after they are enacted into law—we must consider how the word "initiative" is used in AS 44.06.060 to determine the statute's purpose.[11]

Alaska Statute 44.06.060 places "initiatives" and "legislative enactments" in a parallel construction. This suggests that "initiatives" refers to initiatives that voters have approved, because "legislative enactments" refers to enactments that the legislature has approved. The parallel construction implies that the commission must be appointed only after the relocation proposal has become law, either by voter approval or by legislative approval.

The legislature shall establish a commission composed of nine members, including a chairperson and two persons from each judicial district, appointed by the governor and confirmed by the legislature, to determine the costs required by initiatives or legislative enactments authorizing relocation of any of the present functions of state government.

4. Dictionaries provide a useful starting point for determining what statutory terms mean, as they provide the common and ordinary meaning of words. When a popular or common word is used in a statute, but is not defined, the word should be given its common meaning. 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.28 (6th ed.2000).

5. BLACK'S LAW DICTIONARY 788 (7th ed.1999) (emphasis added); *see also* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 629 (1994) (stating "initiative" can refer to *right* or *power* to introduce new legislative measure as well as *procedure* by which citizens can propose law and ensure its submission to electorate).

6. A term which has been judicially interpreted may be considered as a legal term. Legal terms are presumed to have been used in their legal sense. 2A SINGER, *supra* note 4 § 47.30.

7. *Warren v. Boucher*, 543 P.2d 731, 740 (Alaska 1975) (holding that legislative act was substantially similar to "initiative," and thus that lieu-

tenant governor was correct in withholding "initiative" from ballot).

8. *Brooks v. Wright*, 971 P.2d 1025, 1026 (Alaska 1999) (discussing "airborne hunting initiative," an "initiative [which] had already become law").

9. *Wolf v. Alaska State Hous. Auth.*, 514 P.2d 233, 235 (Alaska 1973) (discussing adoption of ordinance "by popular initiative").

10. AS 01.10.040 provides in part:

Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.

11. *See State v. Alex*, 646 P.2d 203, 208 (Alaska 1982) (concluding that meaning of "tax" must be determined from its context in text of Alaska constitution and in discussions at constitutional convention).

Where a word of common usage has more than one meaning, the meaning which will best attain the purpose of the legislature should be adopted in construing the statute. 2A SINGER *supra* note 4, § 47.28.

In addition, AS 44.06.060 states that a commission shall be appointed "to determine the costs required *by initiatives* or legislative enactments *authorizing* relocation of any of the present functions of state government." (Emphasis added.) Before voter approval, a proposed initiative does not require or authorize anything. Applying normal usage, only an initiative already adopted by the electorate would be regarded as "authorizing" a relocation. If the statute had been intended to include proposed initiatives, one would expect it to refer to "costs that *would be* required by initiatives *proposing relocation* of any of the present functions of state government," or use equivalent language. The statute's structure and words therefore imply that AS 44.06.060 does not require the appointment of a FRANK Commission before the voters have adopted an initiative.

This reading is consistent with the historical context. When the FRANK Initiative was adopted in 1994, earlier attempts to relocate the capital and fund the relocation involved multiple initiatives and elections.[12] Thus, from 1974 to 1978 voters had decided in a series of elections (1) to relocate the state capital (1974); (2) to select Willow as the site of the relocation (1976); (3) to require that the costs to relocate the capital be determined (1978); and (4) to require that a bond issue including all bondable costs of capital relocation be approved by a majority of voters before expending state money to relocate the capital (1978). The 1978 provisions were the original "FRANK Initiative," approved by the voters.[13] In 1981 the legislature reenacted the 1978 FRANK Initiative to provide for determining the costs that would be required to relocate the capital.[14] The statute enacted by the legislature in 1981 provided that a FRANK Commission would estimate a list of costs, and that the sum of the costs would be included in a ballot proposition submitted to the voters at the 1982 general election.[15] In 1982 the voters rejected a ballot measure approving the cost of relocating the capital to Willow.[16] The 1982 ballot measure also repealed the existing laws and initiatives relating to capital relocation.[17]

The state's interpretation and implementation of the 1978 FRANK Initiative provide the historical context in which voters enacted the 1994 FRANK Initiative. If the 1994 initiative proponents and the voters who enacted the 1994 FRANK Initiative had been dissatisfied with the historical practice, we would expect that AS 44.06.060 would have included some indication that the commission should determine costs before voters took part in a single election addressing both the move and its costs.[18] The 1994 FRANK Initiative did not attempt to make such a change. The 1994 Initiative included no language suggesting any different process than had been followed after the 1978 FRANK Initiative was adopted.

Before the FRANK Commission can begin its work, the governor must appoint and the legislature must confirm nine commission members, consisting of a chairperson and two persons from each judicial district.[19] Alaska Statute 44.06.055 provides that state money may be expended for a relocation only after a majority of voters have approved "a bond issue that includes all bondable costs to the state of the relocation" over the twelve-year period following approval. The same section also requires the commission to determine all costs, including bondable costs of relocation:

---

12.     http://www.gov.state.ak.us/ltgov/elections/capmove.htm (on file with court).

13.     *Id.*

14.     Ch. 54, § 1, SLA 1981.

15.     *Id.*

16.     http://www.gov.state.ak.us/ltgov/elections/capmove.htm (on file with court).

17.     Ch. 54, § 1, SLA 1981.

18.     *See Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 176 (Alaska 1986) (noting that legislature's enactment of bill making minor technical changes to law but leaving unchanged phrase court considered to be operative supported court's interpretation of statutory language). Alaskan voters, by initiative, also have the opportunity to enact statutory language that changes an existing interpretation and understanding of the law. Alaska Const. art. XII, § 11.

19.     AS 44.06.060.

The commission established in AS 44.06.060 shall determine all bondable costs and total costs including, but not limited to, the costs of moving personnel and offices to the relocation site; the social, economic, and environmental costs to the present and relocation sites; and the costs to the state of planning, building, furnishing, using, and financing facilities at least equal to those provided by the present capital city.[20]

The commission's required duties are potentially difficult and complex. History suggests that a FRANK Commission needs many months to fulfill its statutory duties.[21]

As a matter of practical application, as well as history, the infeasibility of complying with the FRANK Initiative within the four-month framework AFEG proposes adds support to the governor's interpretation of AS 44.06.060.

Public policy considerations also favor the governor's interpretation. The FRANK Commission's duties require a significant expenditure of time and resources. We have considered the financial burden on the state, and thus the public, to be a matter of public policy relevant to our construction of statutes.[22] It would waste state resources to interpret AS 44.06.050–.060 to require the state to create a FRANK Commission and for that commission to determine relocation costs every time a relocation initiative is certified for the ballot. The relatively small number of voters required to obtain certification of an initiative for the ballot does not justify such expense. We agree with the superior court's observation that "it will re-quire very significant expenditures of time and funds for the Commission to prepare such a report (or a majority and minority report if they cannot agree). Presumably the Commissioner will retain staff to assist it." If an initiative is enacted, on the other hand, a majority of all voters have opted to approve a relocation proposal. At that point, the statute requires the state to create a FRANK Commission and the FRANK Commission to determine relocation costs so that the voters can approve the costs before the state incurs them.[23] In this case, the question is not *who* bears the financial burden, but whether and *when* a large financial burden is to be borne by the state. This public policy concern, relating to placing a large financial burden on the public, augments the FRANK Initiative's reasonably clear language and historical context. That financial burden is more justifiably placed on the state *after* a majority of all voters have supported a relocation measure.

We conclude—given the statute's historical context and language, and public policy—that the governor's interpretation of AS 44.06.060 correctly reflects the statute's purpose.

### C. Alaska Statutes 44.06.050–.060 Do Not Violate the Alaska Constitution.

■ AFEG also argues that an interpretation of AS 44.06.060 that would require voters to approve a relocation initiative in one election and then approve a bond measure in a second election—rather than in a single election—would cause AS 44.06.060 to

---

**20.** AS 44.06.055.

**21.** The 1981 legislative reenactment required the FRANK Commission to prepare a voter ballot proposition that included the costs involved in relocating state employees and equipment, making capital improvements, and obtaining indemnification. Ch. 54, § 1, SLA 1981. The legislative reenactment also instructed the commission to revise a 1978 basic development plan. The 1981 legislative enactment was approved by the governor in July 1981, and became effective in October 1981. This gave the commission a year by which to do its work before the 1982 general election was to take place.

**22.** *See Anderson v. Anderson*, 736 P.2d 320, 322 (Alaska 1987) (considering legislature's declared public policy that child support statute be con-strued so as to minimize state's financial burden).

**23.** AS 44.06.050 states:

The purpose of AS 44.06.050–44.06.060 is to guarantee to the people their right to know and to approve in advance all costs of relocating the capital or the legislature; to insure that the people will have an opportunity to make an informed and objective decision on relocating the capital or the legislature with all pertinent data concerning the costs to the state; and to insure that the costs of relocating the capital or the legislature will not be incurred by the state without the approval of the electorate.

violate the Alaska Constitution. It contends that the governor's interpretation of AS 44.06.060 mandates two elections to approve a relocation initiative. This interpretation, AFEG argues, places AS 44.06.060 in conflict with article XI, section 7 of the Alaska Constitution because "[t]here is no restriction authorized on the constitutional initiative process which allows a statute, such as the FRANK Initiative, to be enacted which mandates two elections to approve *any* initiative, including one to relocate legislative sessions." AFEG concludes that under article XI of the Alaska Constitution, "petitioners are entitled to move legislative sessions with a single election." We disagree with AFEG's conclusion. First, article XI, section 7 of the Alaska Constitution—the section dealing with "Restrictions" on the initiative process—provides:

> The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety.

Section 7 limits the purposes for which the initiative process may be used. It does not specify procedural requirements that may be placed upon the initiative process. Further, article XI, section 6—the section on "Enactment"—provides that "[a]dditional procedures for the initiative and referendum may be prescribed by law." [24] We disagree with AFEG's contention that the constitution entitles petitioners to attempt to move the legislative sessions with a single election.[25]

We also agree with the superior court that the statute does not require the same vote twice. The two (or more) votes that are required are on different questions: first, whether a relocation is a good idea, and second, whether the state should expend the money to relocate. The second vote, approv-

ing the costs of relocation, would be necessary whether the concept of relocation has been accomplished by initiative or by legislative enactment. Our interpretation of AS 44.06.060 gives rise to no constitutional violation.

Finally, the governor has raised a defense of laches. Given our resolution of the merits of AFEG's appeal, we do not need to consider whether AFEG unreasonably delayed bringing its claim or whether any delay caused prejudice to the governor in his official capacity.

## IV. CONCLUSION

We AFFIRM the decision of the superior court.

---

**24.**  Alaska Const. art. XI, § 6.

**25.**  Of course, the constitution does not necessarily require two elections. If, as in the underlying ballot initiative in this case, the proposition be-

fore the voters were both to relocate the legislative sessions and repeal AS 44.06.050–.060, one election would suffice.