Joann HOLMES and Mitch Gregoroff, Appellants and Cross–Appellees,

v.

Kane WOLF, Carole Pagano, and Frank Grant, Appellees and Cross–Appellants.

Nos. S–13321, S–13341.

Supreme Court of Alaska.

Dec. 10, 2010.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, for Appellants/Cross–Appellees.

David D. Clark, Law Office of David Clark, Anchorage, for Appellees/Cross–Appellants.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Joann Holmes and Mitch Gregoroff appeal decisions by the superior court in connection with a shareholders' lawsuit against two current members and one former member of the Board of Directors of Leisnoi, Inc. ("Leisnoi") for failure to hold annual shareholder meetings, failure to prepare and distribute annual shareholder reports, failure to obtain and send out annual audited financial reports, and failure to reasonably inquire into a mediated settlement agreement. On appeal, Holmes and Gregoroff argue that the superior court should have ordered the defendant directors to hold annual shareholder meetings, to prepare and send annual shareholder reports, and to obtain and distribute annual audited financial reports. They also appeal the superior court's dismissal of the plaintiff shareholders' derivative claims, failure to award the plaintiff shareholders nominal damages, failure to bar Leisnoi from indemnifying the defendant directors, and award of enhanced attorney's fees against the plaintiff shareholders. Because we conclude that none of the superior court's decisions was in error, we affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS

Leisnoi, Inc. ("Leisnoi") is certified under the Alaska Native Claims Settlement Act (ANCSA) as an Alaska Native Corporation for Kodiak's Woody Island. In October 2004 Robert Erickson, one of Leisnoi's shareholders, filed a complaint against Kane Wolf, Carole Pagano, and Frank Grant, three of Leisnoi's five directors, for failure to hold an annual meeting within thirteen months in violation of Alaska law and failure to provide an annual shareholder report in violation of Alaska law. The complaint also alleged that the defendants had breached their fiduciary duties to the corporation and had been improperly installed as directors.

In January 2005 the defendants filed a motion to require Erickson to file a security for reasonable attorney's fees and costs pursuant to the requirements for derivative shareholder lawsuits set forth in AS 10.06.435(h) and Alaska Civil Rule 23.1(h). The superior court granted the motion and ordered Erickson to file a security of $5,000. In April 2005 Erickson filed an amended complaint adding 17 shareholders, including Holmes and Gregoroff, as plaintiffs. In addition to the earlier allegations, this complaint alleged that the defendants failed to obtain an annual audit in violation of federal law. The plaintiffs requested money damages and orders directing the defendant directors to

hold a shareholder meeting and new election for all directors, to obtain an audit and send all financial statements to the shareholders, and to enter into a settlement with Omar Stratman.[1]

In November 2005 the plaintiffs filed a motion to vacate the order requiring a security on the ground that the 18 plaintiffs listed in the third amended complaint held more than five percent of Leisnoi's outstanding shares. The superior court declined to vacate its order because the complaint had not been verified by all of the named plaintiffs.

The plaintiff shareholders filed two motions for partial summary judgment, one relating to the Board's failure to issue annual reports and the other relating to the Board's failure to enter into a settlement with Stratman. At oral argument on these motions in May 2006, the parties stipulated to dismiss the prayer for relief seeking a court order that the defendant directors enter into a settlement with Stratman, but they agreed that the dismissal would have no effect on the plaintiffs' claims for breach of fiduciary duties. In June the superior court denied the summary judgment motions, concluding that because issuing annual reports is a duty owed by all members of Leisnoi's Board of Directors, the plaintiff shareholders could only obtain relief by suing all five of Leisnoi's directors and/or Leisnoi, not just three individual directors. In light of the superior court's ruling, the plaintiffs informed the court that they would add Frank Pagano and Shannon Johnson, the other two directors, as defendants, but it does not appear that they ever did so.

In December 2006 the superior court granted a motion by the defendants to require the plaintiffs to file an increased security, and in February 2007 it denied a request by plaintiffs to stay that order. At that point, the court had dismissed two of the 18 plaintiffs listed on the third amended complaint.[2] In March 2007 the court dismissed five more plaintiffs.[3] One month later, in April 2007, the defendants filed a motion to dismiss the plaintiffs' claims for their failure to file the court-ordered increased security. The superior court granted the defendants' motion to dismiss as to the plaintiffs' derivative claims. In late July the case went to trial.

In March 2008 the superior court issued its findings of fact and conclusions of law. It again concluded that it could not order the defendants, only three of the five directors, to hold annual shareholder meetings, prepare and send annual shareholder reports, or obtain and distribute annual audited financial reports. It further concluded that the defendant directors did not breach their duties regarding annual meetings or annual reports but did breach their duties by failing to inform themselves about the federal requirement to conduct annual financial audits and by failing to bring the requirement to the attention of the Board. Finally, the superior court concluded that the then-current Board of Directors was properly elected or appointed. The superior court ordered the defendants to raise with the entire Board of Directors the necessity of conducting an annual audit and to provide the Board's decision to the plaintiffs.

The plaintiffs filed motions requesting that the superior court reconsider its order dismissing their derivative claims as to breach of fiduciary duty, bar the defendants from indemnification by Leisnoi, and hold a posttrial hearing to determine money damages. All three motions were denied. The superior court also denied a cross-motion from the defendants to amend its findings.[4]

1. Leisnoi has been engaged in litigation with Stratman since 1976 when Stratman and others filed a lawsuit in federal court to prevent transfer of land to Leisnoi and other ANCSA corporations. *See Leisnoi, Inc. v. Stratman*, 835 P.2d 1202, 1204 (Alaska 1992).

2. In March and April 2006 the superior court dismissed plaintiffs Rosebel Baldwin and Augustine Yovino from the lawsuit.

3. The superior court dismissed Hazel Ardinger, Cecile T. Hiner, Sherringa Holmstrom, Elizabeth Olsen, and Starr Ward from the lawsuit.

4. In October 2008 the defendants filed a motion for enhanced attorney's fees of 75%, which the plaintiffs opposed. The superior court ordered enhanced fees of 50% in December 2008 but did not enter a specific award of attorney's fees until July 2009. That award is the subject of a separate appeal.

Joann Holmes and Mitch Gregoroff, two of the eleven plaintiff shareholders who were part of this lawsuit when it concluded at the superior court level, appeal. The defendant directors cross-appeal.

## III.  STANDARD OF REVIEW

"We apply our independent judgment to any questions of law, adopting the rule of law that is most persuasive in light of precedent, reason, and policy." [5]  We review a trial court's findings of fact under the clearly erroneous standard [6] and review awards for nominal damages and enhanced attorney's fees for abuse of discretion. [7]

## IV.  DISCUSSION

Holmes and Gregoroff appeal several decisions by the superior court. We first address the arguments that it was error to require the plaintiff shareholders to file a security, to increase the amount of the security, and then to dismiss their derivative shareholder claims for failure to file the increased security. Under AS 10.06.435(h) and Civil Rule 23.1(h), where a derivative action is brought by holders of less than five percent of a corporation's outstanding shares, "the corporation in whose right the action is brought or the defendants may at any time before final judgment move the court to require the plaintiff to give security for the reasonable expense, including attorney fees, that may be incurred by the moving party." As the statute and rule continue, "[t]he amount of the security may be increased or

decreased from time to time in the discretion of the court upon a showing that the security has become inadequate or excessive."

Holmes and Gregoroff argue that the superior court should not have required the plaintiffs to post a security because they held more than five percent of Leisnoi's outstanding shares. They also argue that the superior court should not have required a security "because the [plaintiffs'] claims clearly had substantial merit." We conclude that the superior court's finding that the plaintiffs held less than five percent of Leisnoi's outstanding shares was not clearly erroneous. Thus, the superior court did not err in requiring the plaintiffs to post a security, in increasing that security, or in dismissing the plaintiffs' claims for failure to file the increased security. Holmes and Gregoroff's arguments were addressed by the superior court's order denying the plaintiffs' motion to stay the order requiring an increased security, and we adopt that order below as Appendix A. [8]

In affirming the superior court's dismissal of all the plaintiffs' derivative claims, we also affirm its dismissal of the plaintiffs' breach of fiduciary duty claim for failure to reasonably inquire into the proposed mediated settlement with Stratman because, as the plaintiffs acknowledged in one of their post-trial motions, this claim is a derivative claim. [9] Although the plaintiffs had filed a motion for summary judgment on this claim in March 2006, the claim was live until July 2007 when

---

**5.**  *McCormick v. Reliance Ins. Co.,* 46 P.3d 1009, 1011–12 (Alaska 2002).

**6.**  *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979).

**7.**  *State v. Jacob,* 214 P.3d 353, 362 (Alaska 2009) (enhanced attorney's fees); *Brown v. Dick,* 107 P.3d 260, 267 (Alaska 2005) (nominal damages).

**8.**  We have edited all of the appended orders of the superior court to conform with our technical requirements.

**9.**  One treatise explains:

When the corporation is injured and the injury to its shareholders derives from that injury, any damages suffered are owed to the corporation, and only the corporation may bring

suit. . . . Where the cause of action belongs to the corporation, a shareholder may, however, sue derivatively, seeking in effect to require the corporation to pursue a lawsuit to compensate for the injury to the corporation, and thereby ultimately redress the injury to the shareholders. The general rule that a shareholder may bring an action for injuries to a corporation only derivatively prevents a multiplicity of lawsuits by shareholders; protects corporate creditors by putting the proceeds of the recovery back in the corporation; protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and adequately compensates the injured shareholder by increasing the value of his or her shares.
18 C.J.S. *Corporations* § 484 (2009) (footnotes omitted).

it was dismissed with the plaintiffs' other derivative claims.[10]

We next address the parties' arguments regarding annual shareholder meetings, annual shareholder reports, and annual audited financial reports. The plaintiffs argued below that the superior court should order the defendants—who represented a majority of the Board of Directors—to hold annual shareholder meetings, prepare and distribute annual shareholder reports, and obtain and distribute annual audited financial reports. In denying the plaintiffs' motions for partial summary judgment and in making its final rulings after trial, the superior court concluded that because these statutory obligations rest not with individual directors but with Leisnoi itself and with its Board of Directors as a whole, it could not order three out of the five directors to fulfill them. The superior court also concluded that the defendants had not breached their fiduciary duties with respect to holding annual shareholder meetings or providing shareholders with annual reports. However, the superior court concluded that the defendants had breached their fiduciary duties by failing to inform themselves about the federal requirement to conduct annual financial audits and by failing to bring the requirement to the attention of the Board. For that reason, the superior court ordered the defendant directors to raise the issue of the federal audit requirement with the full Board of Directors. On appeal, Holmes and Gregoroff maintain that the superior court "had sufficient parts—a majority of the board—before it to fashion a remedy." In their cross-appeal, Wolf, Pagano, and Grant argue that it was error to conclude that they violated their fiduciary duties because the plaintiffs did not prove damages. We conclude that the superior court did not err in declining to order the plaintiffs to hold annual shareholder meetings, prepare and distribute annual shareholder reports, or obtain and distribute annual audited financial reports. We also conclude that the superior court did not err in determining that the defendant directors did not act with reasonable care by failing to inform themselves about the federal requirement to conduct annual financial audits and by failing to bring the requirement to the attention of the Board. The superior court addressed these arguments in three orders—one denying the plaintiffs' motions for summary judgment, one setting out its findings of fact and conclusions of law, and one denying post-trial motions filed by the plaintiffs and the defendants. We adopt these orders, which we attach as Appendix B, Appendix C, and, to the extent that it addresses the defendants' cross-appeal, Appendix D.

Holmes and Gregoroff also argue that it was error not to award nominal damages to the plaintiff shareholders after finding that the defendants breached their fiduciary duties. We conclude that declining to award the plaintiffs nominal damages under the circumstances of this case was not an abuse of discretion. The superior court addressed this issue in the order we attach as Appendix D, and we adopt that order to the extent that it addresses plaintiffs' argument and does not conflict with this opinion. In *Brown v. Dick*, we held that the superior court was not required to award nominal damages against individual directors and officers of a corporation for proxy disclosure violations in shareholder election contests.[11] As in *Brown*, we do not define "the permissible outer limits for awarding nominal damages" in situations involving a director's breach of fiduciary

---

**10.** At oral argument in May 2006 for the several motions for summary judgment the plaintiffs had filed, the parties stipulated to dismiss the prayer for relief requesting the court to order the defendants to settle with Stratman with the understanding that this would not affect their claims for breach of fiduciary duty. In its June 2006 order, the superior court noted this stipulation but did not rule on the breach of fiduciary duty claim. Following this order, no party requested that the superior court rule on the plaintiffs' motion for summary judgment as to their claim regarding the duty to inquire into the proposed mediated settlement.

**11.** 107 P.3d 260, 266–67 (Alaska 2005). We also noted that several cases decided by the Delaware Supreme Court "only approve nominal damages when actual economic harm is proved or apparent." *Id.* at 266 (citing *Malone v. Brincat*, 722 A.2d 5, 12 (Del.1998), and *Loudon v. Archer–Daniels–Midland Co.*, 700 A.2d 135, 142 & nn. 26–27 (Del.1997)).

duty.[12] In this case, the superior court found that "the directors ... acted in good faith and in the best interests of Leisnoi" and were not "engaged in self-dealing" but were "serving on a pro bono basis for the benefit of Leisnoi and its shareholders." After reviewing applicable case law, the superior court determined that Alaska has no per se rule requiring an award of nominal damages where there is a breach of fiduciary duties under these circumstances. We agree and hold that failing to award nominal damages against the directors in this case was not an abuse of discretion.

Finally, Holmes and Gregoroff argue that the superior court should have barred Leisnoi from indemnifying the defendant directors after it concluded that the defendant directors breached their fiduciary duties with respect to the audited financial reports. Under AS 10.06.490(a), a corporation may indemnify its directors for expenses "reasonably incurred" in connection with litigation "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." Under AS 10.06.490(c), a corporation *must* indemnify a director who "has been successful on the merits or otherwise" in defense of certain lawsuits. It is not clear that the relief sought by plaintiffs, barring indemnification of directors, is available in a lawsuit against three of five individual directors.[13] But it is clear that the superior court did not err in declining to bar Leisnoi from indemnifying the defendant directors because, under AS 10.06.490(c), the defendants' success on the merits of this case entitled them to indemnification. We therefore adopt the superior court's order declining to bar Leisnoi from indemnifying the defendants, which we attach as Appendix E.

12. *Id.* at 266.

13. Under AS 10.06.490, the option and sometimes obligation to indemnify belongs to the corporation, and the decision to indemnify may be made by the corporation's Board of Directors, independent legal counsel, or approval of the outstanding shares. It is therefore possible that the relief sought by plaintiffs may only be granted in a lawsuit against Leisnoi itself or the Board of Directors as a whole.

## V. CONCLUSION

For these reasons and the reasons discussed in the superior court's attached orders, we AFFIRM the superior court in all respects.

CARPENETI, Chief Justice, not participating.

### APPENDIX A

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT ERICKSON, *et al.*, Plaintiffs,

v.

KANE WOLF, CAROLE PAGANO and FRANK GRANT, Defendants.

Case No. 3AN–04–13743CI

### *ORDER*[1]

■ This matter is before the court on a Motion to Stay Order Requiring the Plaintiffs to Increase the Amount of the Bond.

In increasing the security, this court considered whether the 5% threshold had been met. Plaintiffs assert that there are 17 plaintiffs owning 166.31 shares, and with 2,639 outstanding shares, this is 6.2%. The plaintiffs are wrong to the extent that the number of total shares in the corporation is 2,971.801.[2] After adding up all of the shares of the plaintiffs named in the Third Amended Complaint, all named plaintiffs hold 166.313 outstanding shares. However this includes the 10 shares of Rosebel Baldwin, dismissed on March 17, 2006, and the 12 shares of Augustine Yovina, dismissed on April 25, 2006. Subtracting their 22 shares from the 166.313 leaves the remaining plaintiffs with 144.313 shares. Using 2,971.801 as the cor-

1. This order and the orders that follow have been edited to conform with the technical rules of the Alaska Supreme Court, and some internal citations have been omitted.

2. This court actually added up all of the shares in Exhibit 1 by creating a spreadsheet.

rect number of outstanding shares leaves the remaining plaintiffs with only 4.8561 percent, short of the 5% required under Civil Rule 23.1(h). Further, the remaining plaintiffs have not verified the complaint. There is an issue whether Hazel Ardinger, who holds 10 shares, has agreed to proceed as a plaintiff.

██ The standard for issuing a stay on appeal is the same three-part test for deciding whether an injunction should issue. This involves whether exigent circumstances require that relief be granted before a full adjudication on the merits. In deciding whether to grant or deny a preliminary injunction, Alaska courts apply the "balance of hardships" test.[3] Immediate injunctive relief is warranted when the following three factors are present: "(1) the plaintiff must be faced with irreparable harm; (2) the opposing party must be adequately protected; and (3) the plaintiff must raise 'serious' and substantial questions going to the merits of the case."[4] Where the harm is not irreparable, or where the other party cannot be adequately protected, then the moving party must show probable success on the merits.

Applying this standard for granting the stay, this court concludes that the balance of hardship tests does not warrant a stay here. Plaintiffs have not shown irreparable harm, and further have not raised serious and substantial questions going to the merits of the issue, much less probable success on the merits of the case.

Accordingly, the Motion for a stay is denied.

Dated Feb. 22/07 at Anchorage, Alaska.

/s/ Sen K. Tan
Superior Court Judge

### APPENDIX B

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT ERICKSON, et al., Plaintiffs,

v.

KANE WOLF, CAROLE PAGANO, and FRANK GRANT, Defendants.

Case No. 3AN–04–13743CI

### *ORDER*

Before the court are two motions for summary judgment. The first, defendants' motion filed in April of 2005 with a late-filed opposition in May of 2006 related to plaintiffs' prayer for relief to order the defendants to enter into a settlement agreement with Omar Stratman, and the second, plaintiffs' motion with respect to claims for failure to provide annual reports. The court heard oral argument on May 24, 2006 on both of these motions and will address each in this order.

(1) **Defendants' Motion for Summary Judgment Re: Prayer for Relief Five (5) Seeking To Order Defendants To Enter into a Settlement Agreement with Omar Stratman.**

Defendants moved for summary judgment on plaintiffs' claim that seeks an order that the defendants enter into a settlement with Omar Stratman. At oral argument the parties stipulated that prayer for relief five (5) in the third amended complaint should be dismissed. The parties further agreed that the dismissal of this prayer for relief shall not have any effect on the plaintiffs' claims for breach of fiduciary duties. This court accordingly granted the dismissal of the claim on the record.

(2) **Plaintiffs' Motion for Summary Judgment Re: Counts II and III**

██ Plaintiffs have moved for summary judgment on counts II and III of their complaint. These two counts allege that the defendants failed to prepare and distribute annual reports. Plaintiffs rely on AS 10.06.433 for their proposition that they should be awarded penalties for the corpora-

---

**3.** See A.J. Indus., Inc. v. Alaska Pub. Serv. Comm'n, 470 P.2d 537, 540 (Alaska 1970).

**4.** Messerli v. Dep't of Natural Res., State of Alaska, 768 P.2d 1112, 1122 (Alaska 1989) (quoting Alaska Pub. Util. Comm'n v. Greater Anchorage Area Borough, 534 P.2d 549, 554 (Alaska 1975)), abrogated on other grounds by Olson v. State, Dep't of Natural Res., 799 P.2d 289, 292–93 (Alaska 1990).

tion's failure to provide annual reports for certain years between 1999 and 2004. Alaska Statute 10.06.433(f) provides that "[a] *corporation* that neglects, fails, or refuses to prepare or submit" an annual report is subject to a penalty of $25 per day with a maximum penalty of $1500. (Emphasis added.)

The lead plaintiff in this case, Erickson, made a demand on the corporation for missing annual reports in August of 2004, and in October of 2004 filed suit against three of the corporation's directors. Subsequently, numerous other shareholders have joined the suit as plaintiffs. The plaintiffs now seek penalties from the named directors for failing to send out annual reports. Plaintiffs argue that the defendant directors should be liable for penalties for failing to prepare and provide annual reports essentially based on the status of a corporation as a legal fiction. They argue that the corporation cannot act without some action by the board and therefore the board and its directors are liable for the corporation's actions or inactions.

The defendants oppose the motion, arguing that any penalties for such a failure to provide annual reports are the obligation of the corporation and not the individual directors.

While the plaintiffs are correct that a corporation does not act without involvement of the board of directors or other agents, AS 10.06.433(f) is clear. The statute provides that a corporation that neglects, fails, or refuses to provide annual reports is subject to a penalty. The statute does not state, nor is there any implication, that the directors of a corporation are personally liable for the corporation's failure to provide annual reports.

In this case the plaintiffs have made the decision to sue only three of the members of the board of directors. They did not sue all of the members who sat on the board during the times that they claim they did not receive annual reports. Nor have the plaintiffs chosen to sue the corporation directly in order to force the corporation to prepare and provide legally sufficient annual reports.

The court hereby finds that AS 10.06.433(f) imposes penalties on a corporation that does not provide its shareholders with annual reports. Alaska Statute 10.06.433(f) does not create personal liability for the limited and select few directors whom the plaintiffs in this case have sued.

■ Alternatively, the plaintiffs argue that the court should order the three named directors to prepare and distribute the missing annual reports. They rely on AS 10.06.433(a) for the proposition that although the corporation is liable for penalties, it is the directors' duty to prepare and distribute the corporation's annual reports. For this reason, plaintiffs argue that even without imposing penalties on the directors, the court may still order them to prepare and distribute annual reports as well as order them to be prepared expeditiously.

Alaska Statute 10.06.433(a) provides that "[t]he board shall send an annual report to the shareholders...." This annual report must be sent within 180 days of the end of the previous fiscal year to which the report pertains.[1] Likewise, the report must contain certain statutorily required information.[2]

To order the board to send out an annual report, the board must be a party to this litigation. It is undisputed that only three of the five board members who were on the board at the time of the demand in August of 2004 were named as parties. Plaintiffs argue that three of five directors, constituting a majority, are all that is required in a suit against the board of directors for their failure to provide annual reports. Plaintiffs argue that naming a simple majority in a case constitutes filing suit against the board of directors because any action by the board only requires a majority vote in order to be approved.

Defendants argue that where a statute creates an obligation for "the board" that obligation is one for the entire board and not just a majority of the members. They argue that if the plaintiffs sought to sue the board

1. AS 10.06.433(a).

2. AS 10.06.433(a)-(b).

of directors to force them to take some action, they should have sued all five members of the board at the time the initial plaintiff made his demand for annual reports. They argue that it was a tactical decision to only sue three directors in this case instead of all of the directors.

The question for the court is: Can it order three out of five of the directors of a corporation to take some action? Specifically, can the court order those three directors to produce annual reports? Alaska Statute 10.06.433(a) is clear that the obligation to send annual reports falls on "the board." The term "board" is not defined. Plaintiffs suggest that "board" should mean any majority of the members, while the defendants argue that "board" must be read to mean all the members of the board.

The Alaska Supreme Court has stated that when common terms are used within statutory language, without definition, the words should be given their common meaning.[3] The Alaska Supreme Court also stated in *Alaskans for Efficient Government* that dictionaries are a "useful starting point for determining what statutory terms mean, as they provide the common and ordinary meaning of words."[4] The term "board" is defined in Black's Law Dictionary as "[a] committee of persons organized under authority of law in order to exercise certain authorities, have oversight or control of certain matters, or discharge certain functions of a magisterial, representative, or fiduciary character. Thus, 'board of aldermen,' 'board of health,' 'board of directors,' 'board of works.'"[5] Further, Black's Law Dictionary defines "directors" as "[p]ersons appointed or elected according to law, authorized to manage and direct the affairs of a corporation or company. The *whole* of the directors collectively form the board of directors."[6]

This court hereby finds that the term "board" as used in AS 10.06.433(a) refers to the collective total of the board, i.e., all mem-

bers of the board. All members of the board have a duty to provide shareholders with annual reports that comport with the requirements of that section. It is not a duty of a simple majority of the board, nor is it an action that requires a vote by a majority of the board to take place.

Accordingly, this court does not have the authority or jurisdiction to order non-named members of a board of directors to take action. In this case, because only three of the members at the time the demand was placed on the board are named, the court cannot therefore order those three directors to prepare and send annual reports to shareholders without the inclusion of all the directors that were sitting on the board at the time the demand was made. For all the aforementioned reasons, plaintiffs' motion for summary judgment is hereby denied.

DATED this 2 day of June 2006 at Anchorage, Alaska.

/s/ Sen K. Tan
Superior Court Judge

### APPENDIX C

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT ERICKSON, *et al.*, Plaintiffs,

v.

KANE WOLF, CAROLE PAGANO and FRANK GRANT, Defendants.

Case No. 3AN–04–13743CI
*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

### Introduction and Parties

1. This matter came before the court for trial on the week of July 23, 2007. After trial, the parties filed written closing arguments and proposed Findings of Fact and Conclusions of Law.

---

**3.** *See Alaskans for Efficient Government, Inc. v. Knowles,* 91 P.3d 273, 276 n. 4 (Alaska 2004).

**4.** *Id.*

**5.** Black's Law Dictionary 157–158 (5th ed.1979).

**6.** *Id.* at 414 (emphasis added).

2. There are numerous plaintiffs in this case. Only one plaintiff, Joann Holmes, appeared at trial. All other plaintiffs appeared by verified consent over the objections of the defendants to proceed in their absence, with the exception of Nick Pavoloff. Michael J. Walleri, counsel for plaintiffs, represented to the court that Mr. Pavoloff wished the trial to proceed in his absence. The only plaintiff who testified at trial was Joann Holmes. All plaintiffs are shareholders of Leisnoi, Inc. ("Leisnoi").

3. The defendants are Kane Wolf, Carole Pagano and Frank Grant. They are also members of Leisnoi, and are directors of the corporation.

4. Kane Wolf has been a director of Leisnoi continually since November 11, 1995.

5. Frank Grant has been a director of Leisnoi continually since November 11, 1995.

6. Carole Pagano has been a director of Leisnoi from May 30, 1998 until August 4, 2002, and from August 2004 until the present.

7. Leisnoi has not been sued by the plaintiffs and is not a party to this litigation.

### Leisnoi, Inc. and Board of Directors and Annual Meetings

8. Leisnoi is an Alaska Native Corporation, established as part of the Alaska Native Claims Settlement Act.

9. Leisnoi's history as a viable corporation is one fraught with litigation, particularly with regard to Mr. Omar Stratman, with whom Leisnoi has had ongoing legal disputes for many years. Leisnoi has not really engaged in any real business enterprises since 1998.

10. As initially constituted, Leisnoi had a seven-member Board of Directors. Leisnoi's Board of Directors was reduced to five by a resolution of the Board of Directors in August 2001. The Board reduced the number of directors from seven to five as a cost-saving measure. This decision to reduce the number of directors was ratified by the Board of Directors at the 2002 annual meeting by unanimous consent and further ratified by a unanimous vote of the majority of shareholders at the 2002 meeting. The March 3, 2002 minutes indicate that "Shareholder Jana Turvey gain[ed] the floor and . . . move[d] that the shareholders . . . endorse and ratify the August 8, 2001 cost savings decision by the Board of Directors . . . to reduce the number of Directors from seven (7) to five (5) members. . . ."

11. There was a quorum at the 2002 annual shareholders meeting, certified by the election judge. At the 2002 meeting five directors were elected for staggered terms: two directors for a three-year term, two directors for a two-year term, and one director for a one-year term. The directors elected were Bruce Robertson, Frankie Grant, Christina Hoen, Carole Pagano, and Kane Wolf. Robert Erickson and Frank Pagano ran as directors but were not elected.

12. Carole Pagano resigned from the Board in August 2002. She did not agree with the policy to grant Roy Jones's law firm a security interest in the sales proceeds to its Joint Venture properties in Bellingham and to its 7(i) distributions. Leisnoi was billed over $700,000 by Roy Jones's law firm. Jones was hired to address the legal issues arising from the Stratman litigation.

13. Leisnoi held the annual meeting of shareholders in 2003 after several attempts to get a quorum. Robert Erickson ran for the election against Kelly Simeonoff. Robert Erickson lost the 2003 election, and Kelly Simeonoff was elected to the Board.

14. 2004 was a tumultuous year for Leisnoi. No elections were held in 2004. The corporation's finances were in turmoil and Bruce Robertson, the long-time president of Leisnoi, was replaced as president by Kelly Simeonoff. Frank Feichtinger, the general manager of Leisnoi, was asked to leave in May of 2004, and Kelly Simeonoff resigned as president for health reasons in May of 2004. The corporate offices were closed, and all files and records were moved into a private storage facility. When Carole Pagano became a director in the summer of 2004, Leisnoi's office was in cardboard boxes. The records were a mess. There was consideration in 2004 to dissolve Leisnoi as a corporation.

15. Bruce Robertson resigned from the Board in the first half of 2004. The reason for the resignation was a threat by Robert Erickson to sue Bruce Robertson. Carole Pagano was appointed to fill Bruce Robertson's position.

16. Kelly Simeonoff and Cristina Hoen resigned from the Board of Directors after Robert Erickson wrote a letter threatening to sue them in August 2004.

17. To fill the vacancies on the Board, Frank Pagano was appointed to replace Kelly Simeonoff. Frankie Grant voted against appointing Frank Pagano. Robert Erickson was offered Christina Hoen's board seat but he refused. Instead, Shannon Johnson was appointed to the board in April of 2005.

18. Frank Feichtinger was the general manager of Leisnoi between September 2000 and May 31, 2004.[1]

19. Kane Wolf was elected President in May 2004. The Leisnoi offices were re-opened shortly after Carole Pagano was hired to be the office administrator for $3,000 per month. She was paid irregularly, and she was paid only when Leisnoi had money.

20. After the departure of Frank Feichtinger, Leisnoi did not have any staff until Carole Pagano was hired with the following duties: make sure the files were in order; handle and maintain shareholder records, estates, and fundraising; obtain grants to meet the corporation's obligations to the State of Alaska; interface with the different governmental entities which affect Leisnoi; respond to shareholder inquiries; notice annual meetings; work with Leisnoi's attorneys; pay bills; and do accounting journal entries.

21. Leisnoi held an annual meeting in 2005 after two continuances to obtain a quorum. A quorum was obtained in October 2005.

22. In 2005 Leisnoi sent to its shareholders the notice of the election and call for nominations. Frankie Grant, Carole Pagano,

Kane Wolf, and Shannon Johnson were elected directors at this annual meeting.

23. In 2006 Leisnoi sent to its shareholders the notice of the election, annual report, and call for nominations. Leisnoi held a meeting in December 2006 but did not have a quorum, and the meeting was continued. After payment of taxes and ongoing business and litigation expenses, it did not have sufficient funds to hold the continued meeting, and one was not held.

24. Leisnoi did not have sufficient funds to hold a meeting during the first half of 2007, as it had to borrow money from Koniag to pay its taxes due in the first half of 2007. Leisnoi may have held a meeting during the second half of 2007.

25. None of the defendants except Thelma Johnson have voted in any recent election.

26. The one plaintiff who attended trial, Joann Holmes, has not voted in any recent election. She alleged she has not received any mail from the corporation but never made inquiries of the corporation to let them know she was not receiving mail. None of Joann Holmes's mailings were ever returned to the corporation as undeliverable. The corporation had Ms. Holmes's correct mailing address. Carole Pagano testified that in 2004 and in 2005 annual shareholder reports were mailed to Joann Holmes.

27. Before trial, Frank Pagano met with plaintiff Robert Erickson, who told Mr. Pagano that he did not want to testify, did not want this case to go forward, and wanted the case to be dismissed. He had earlier made similar statements to Mr. Wolf. Mr. Erickson told Mr. Pagano that the case was out of his hands.

28. Mr. Erickson wanted to serve on the Board of Directors and ran for election in 2002. At that time, he and Mr. Pagano were friends. Neither of them succeeded in getting elected. There is credible evidence that Mr. Erickson met with Mr. Stratman in 2004. After meeting with Mr. Stratman, he sent

---

1. Frank Feichtinger, the former general manager, filed a lawsuit against Leisnoi in the fall of 2004 alleging damages for unpaid "wages." After trial by jury in July of 2006, the jury found that Frank Feichtinger had breached his contract with Leisnoi and also breached the duty of good faith and fair dealing.

letters threatening the seated board of directors with this lawsuit. As a result, three of the directors, Mr. Robertson, Mr. Simeonoff, and Ms. Hoen resigned. Mr. Erickson was offered one of the Board seats, but turned down the opportunity to serve on the Board. Instead, he proceeded with the lawsuit against the two remaining directors, and added Ms. Pagano to the list.

29. There is no doubt in this court's mind that Mr. Erickson was the moving force behind this lawsuit. It is peculiar that Mr. Erickson chose not to even attend trial, or explain to the court why he sought to take the actions that he did. This only lends credence to the plaintiffs' contention that Mr. Erickson and the faction he led wanted to force the Leisnoi board to either accept the settlement or negotiate a settlement with Mr. Stratman. This is clear when the court considers the Complaint in this case.

30. The proxies used for the annual meetings were admitted into evidence. The 2002, 2003, and 2005 management proxy solicitations all have the language that the proxy must be tendered 60 days before the annual meeting. The proxies used in 2005 were used within 11 months from the date they were granted. This court finds that the proxies used in the 2005 election were valid.

### Leisnoi's Financial Situation

31. In the early years of its existence, Leisnoi was a solvent enterprise. Leisnoi had a logging business and bought a building in Kodiak. Leisnoi paid a few dividends during the late nineties.

32. The last audit of the corporation was performed in 1998. Since then, no audited financial statements have been provided to the shareholders.

33. There was a lis pendens filed by Mr. Stratman against all real property assets of Leisnoi.[2] As a result, Leisnoi has had a difficult time sustaining any business activity since logging activities ended in 1998. Since the Trillium Joint Venture Bellingham assets were sold in 2002 to pay most of Roy Jones's bill, Leisnoi has not had any money-making

assets. Because of the lis pendens, Leisnoi has no active business, cannot sell its land, cannot use its property productively, and cannot use the property to finance any activities.

34. The lis pendens filed by Mr. Stratman covers the Cliff Point development. Leisnoi is a 50–50 joint venture partner with Trillium Corporation in the Cliff Point Subdivision in Kodiak. There are 40 10–acre lots in the subdivision. Leisnoi is responsible for paying half of the property taxes due to the Kodiak Island Borough on the Cliff Point property.

35. Leisnoi has a limited source of income from Koniag Corporation. Leisnoi also had some significant debts. In an effort to deal with the Stratman litigation, Leisnoi hired Roy Jones. The effort resulted in a judgment against Leisnoi in excess of $600,000.

36. Eileen Zaiser is a certified public accountant. She started working for Leisnoi around 1999. Except for an absence starting sometime in 2003 and in December 2004, she has basically kept the books for Leisnoi.

37. Leisnoi's financial books are kept on an accrual basis. A profit shown in any given year is not reflective of cash flow. Exhibit 2001 shows that Leisnoi had a $387,634.00 loss in 2001 and a $250,879.00 gain in 2002. For that two-year period there was a net loss of $136,755.00.

38. The corporation had a net loss of $282,410.47 in 2003. In FY 2004, after the payment of legal and other operational expenses, the corporation had a net income of $71,126.16. The two years combined showed a net loss of $211,284.47. For the period 2001 through 2004 Leisnoi's net losses were $348,039.47.

39. In FY 2005, after the payment of legal and other operational expenses, the corporation realized a net income of $34,412, however the corporation was still paying outstanding obligations from previous years. Accrual statements do not show that prior years' costs are still being paid by the corporation.

---

2. See Stratman v. Leisnoi, Inc., 969 P.2d 1139, 1140 (Alaska 1998).

40. At each annual meeting in 2002, 2003, 2005, and 2006, financial statements were provided to the shareholders. None of the financial statements were audited. An audit of the corporation's books would cost between $15,000 and $25,000 for any given year.

41. All defendants testified that Leisnoi had insufficient money to obtain an audit in 2003, 2004, 2005, and 2006. The costs are not yet in for 2007.

42. None of the defendants receive any compensation for being a director. None of the current directors of Leisnoi receive any money for being a director. None of the directors have received any money since 2002. Kane Wolf received $1,000 in 2004, but that was a reimbursement for moving costs when the corporation closed down in 2004. Carole Pagano and Kane Wolf testified that they advance money to Leisnoi and wait until 7(i) money is available to be paid back. In addition, Kane Wolf testified that he takes his vacation time every year to do corporation business. The current board of directors is serving on a pro bono basis.

### Shareholder Database

43. Ms. Pagano was in charge of the shareholder database and corporate records for a period of time until 1999. When Frank Feichtinger was hired as the general manager, he took over the job of keeping up the database.

44. Carole Pagano took the recordkeeping job back in 2004, and the shareholder database and records of Leisnoi were not in good shape. Former General Manager Frank Feichtinger had failed to update addresses and other information. The shareholder database had bad addresses and several estates were not complete; the database was basically a mess.

45. Ms. Pagano, as the only administrative officer of Leisnoi, performs many functions.

### CONCLUSIONS OF LAW

This court has previously dismissed all derivative claims. The plaintiffs in this lawsuit are individual shareholders of Leisnoi. What remains are the shareholder direct claims against three individual directors. Leisnoi has not been sued or joined in this lawsuit and is not a party to this litigation. The lawsuit has not named the Board of Directors of Leisnoi as a party to this lawsuit.

This court concludes after review of the facts that Leisnoi has a Board of Directors of five members. Initially, the Board of Directors consisted of seven members. In 2001, the Board of Directors reduced the size of the Board to five members, and that decision was ratified at the shareholder meeting in 2002. Further, Bylaw 3.10 provides that "the majority of the remaining directors may elect a successor to hold office for the unexpired term...." In 2004 Carole Pagano, Frank Pagano, and Shannon Johnson were properly appointed to the Board of Directors.

Regarding the issue of what constitutes the Board of Directors, this court concludes that the three directors did not act as a block or a control group. There is no evidence that there was any understanding or agreement between Mr. Wolf, Mr. Grant, and Carole Pagano that they would vote as a block on the matters that are at issue in this trial. There is evidence that they each voted independently. For example, Frankie Grant disagreed that Frank Pagano should be appointed to the Board of Directors. Thus this court concludes that the Board of Directors of Leisnoi includes *all* members of the Board and not just the defendant directors.

This court will now go through each of the remaining counts.

### Count I—Failure To Hold Annual Meeting of Shareholders Within 13 Months, AS 10.06.405

Alaska Statute 10.06.405(b) provides that "[i]f the annual meeting is not held within any 13–month period, the superior court may on the application of a shareholder summarily order a meeting to be held."

At the outset, this court previously concluded that an individual shareholder may

bring this cause of action. However, it appears that the plaintiffs have sued the wrong party. Under Leisnoi Bylaws, Article 2.2, "[t]he Annual Meeting shall be held on a Saturday or such other day as shall be fixed by resolution of the Board of Directors within 180 days after fiscal year end."

The statutory obligation to conduct the annual meeting is placed on the Board of Directors. As the Board of Directors has not been sued, (nor has the corporation) even if an annual meeting has not been held within a 13–month period, no individual director may schedule a meeting.

Leisnoi held a meeting in October 2005. In 2005 Leisnoi sent to its shareholders the notice of the election and call for nominations. Frankie Grant, Carole Pagano, Kane Wolf, and Shannon Johnson were elected directors at this annual meeting. In 2006 Leisnoi sent to its shareholders the notice of the election, annual report, and call for nominations. Leisnoi held a meeting in December 2006 but did not have a quorum, and the meeting was continued. After payment of taxes and ongoing business and litigation expenses, it did not have sufficient funds to hold the continued meeting, and one was not held.

Leisnoi did not have sufficient funds to hold a meeting during the first half of 2007, as it had to borrow money from Koniag to pay its taxes due in the first half of 2007. Leisnoi may have held a meeting during the second half of 2007.

3. AS 10.06.433(a).

4. AS 10.06.433(f).

5. 43 U.S.C. § 1606(o) states:

> The accounts of the Regional Corporation shall be audited annually in accordance with generally accepted auditing standards by independent certified public accountants or independent licensed public accountants, certified or licensed by a regulatory authority of the State or the United States. The audits shall be conducted at the place or places where the accounts of the Regional Corporation are normally kept. All books, accounts, financial records, reports, files, and other papers, things, or property belonging to or in use by the Regional Corporation and necessary to facilitate the audits shall be available to the person

### Count II and Count III—Failure To Provide Annual Shareholder Report

The state statutory provision provides that the corporation's "board shall send an annual report to the shareholders not later than 180 days after the close of the fiscal year...."[3] If the corporation fails to do so, it will be liable for a penalty of $25 per day starting 30 days after receipt of a written request, up to a maximum of $1,500.[4] This statutory requirement creates a corporate obligation to individual shareholders and an associated penalty for non-compliance. Again, although the statute creates an individual cause of action, the obligation to provide an annual report rests with the corporation and the Board of Directors, not the individual directors.

Under ANCSA 43 U.S.C. § 1606(o),[5] the corporation's accounts shall be audited annually in accordance with generally accepted auditing standards and transmitted to each stockholder. 43 U.S.C. § 1607(c) provides that 43 U.S.C. § 1606(o) applies to village corporations. However, the statute does not create an individual cause of action or provide for statutory remedies.

Again, although the statute creates an individual cause of action, the obligation to provide an annual audit rests with the corporation and the board of directors, not the individual directors.

### Count IV—Breach of Fiduciary Duties

The duties of an individual director are set forth in AS 10.06.450(b).[6] There is a

> or persons conducting the audits; and full facilities for verifying transactions with the balances or securities held by depositories, fiscal agent, and custodians shall be afforded to such person or persons. Each audit report or a fair and reasonably detailed summary thereof shall be transmitted to each stockholder.

6. Alaska Statute 10.06.450 provides, in relevant part:

> (b) A director shall perform the duties of a director, including duties as a member of a committee of the board on which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances. Except as pro-

similar duty imposed on officers of the corporation set out in AS 10.06.483(e).[7] A director's or officer's fiduciary duty requires him or her to act in good faith, and to act in a manner he or she reasonably believes to be in the best interests of the corporation, and to act with the care, including reasonable inquiry, that an ordinarily prudent person would use under similar circumstances.

Under the statute, a director is entitled to rely on information, opinions, reports, or statements prepared or presented by counsel, public accountants, or other persons as to matters that the director reasonably believes to be within the person's professional or expert competence. An officer is not acting in good faith if the officer relies on others despite having knowledge concerning the matter in question that makes reliance on others unwarranted.

Here plaintiffs allege that the defendant directors "failed to insure that the Corporation complied with state and federal law respecting annual reporting, and the conduct of annual meetings."

With respect to each of the plaintiffs' theories this court must decide

(1) Did the individual directors act in bad faith; *or*

(2) Did the individual directors not act in a manner that they reasonably believed to be in the best interests of Leisnoi; *or*

(3) Did the individual directors not act with the care, including reasonable inquiry, which an ordinarily prudent person in a like position would use under similar circumstances?

■ This court finds in general that the directors and officers in this lawsuit acted in good faith and in the best interests of Leisnoi. There is no evidence that the directors sued in this lawsuit and in their capacity as officers were acting in bad faith, for their self interest, or engaged in self-dealing. Indeed the opposite is true. The parties who have been sued are serving on a pro bono basis for the benefit of Leisnoi and its shareholders. They have not been paid for their services and have contributed their time to the furtherance of keeping Leisnoi alive for the shareholders. Carole Pagano is the only person in this lawsuit who is in a paid position. She is paid a very reasonable wage, and at times has to wait for payment when Leisnoi is short on funds.

There is no self-dealing, personal enrichment, or lack of good faith on the part of the directors.

Although they are somewhat irrelevant, this court questions the motives and good faith of the plaintiffs, especially Mr. Erickson. It appears that he was a moving force in bringing about the lawsuit, but did not appear for trial. Indeed, most of the plaintiffs did not appear for trial. Mr. Erickson's actions suggest a personal agenda. He threatened to sue certain previous directors and succeeded in getting two members to resign. He was then offered a seat on the board, which he refused. It appears that

vided in (c) of this section, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by
(1) one or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;
(2) counsel, public accountants, or other persons as to matters that the director reasonably believes to be within the person's professional or expert competence; or
(3) a committee of the board upon which the director does not serve, designated in accordance with a provision of the articles or the bylaws, as to matters within the authority of the committee if the director reasonably believes the committee to merit confidence.

(c) A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by (b) of this section unwarranted.

7. Alaska Statute 10.06.483 provides, in relevant part:

(e) An officer shall perform the duties of the office in good faith and with that degree of care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances. Except as provided in (f) of this section, an officer is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data in each case prepared or presented by legal counsel or public accountants.

Mr. Erickson is more interested in being a gadfly, remaining outside and casting stones.

Joann Holmes, the only plaintiff who appeared for trial, has not voted in any recent election and alleged she has not received any mail, but never informed the corporation that she was not receiving mail. None of Joann Holmes's mailings were ever returned to the corporation as undeliverable. The corporation had Ms. Holmes's correct mailing address. Carole Pagano testified that in 2004 and in 2005 annual shareholder reports were mailed to Joann Holmes. This court finds that Ms. Holmes is not a credible witness.

With regard to the holding of the annual meetings, Leisnoi held a meeting in October 2005. In 2005 Leisnoi sent to its shareholders the notice of the election and call for nominations. Frankie Grant, Carole Pagano, Kane Wolf, and Shannon Johnson were elected directors at this annual meeting.

In 2006 Leisnoi sent to its shareholders the notice of the election, annual report, and call for nominations. Leisnoi held a meeting in December 2006 but did not have a quorum, and the meeting was continued. After payment of taxes and ongoing business and litigation expenses, Leisnoi did not have sufficient funds to hold the continued meeting, and one was not held.

Leisnoi did not have sufficient funds to hold a meeting during the first half of 2007, as it had to borrow money from Koniag to pay its taxes due in the first half of 2007. This court does not know whether Leisnoi held any annual meetings in 2007.

Given the circumstances of the difficulty of getting a quorum, as well as the additional expense of continuing a meeting, this court finds that the three directors did not breach their fiduciary duty regarding calling annual meetings. Leisnoi held an annual meeting in December 2006, and thus had until January 2008 to hold the next meeting.

█ The next issue is with regard to the annual reports and the audited financial reports. At each annual meeting in 2002, 2003,

2005, and 2006 shareholder reports and financial statements were provided to the shareholders. No shareholder report or financial statement was provided to shareholders in 2004. This court finds that although no report was sent out, the individual directors/officers did not breach their fiduciary duty. 2004 was a terrible year for Leisnoi; it was on the brink of disaster. Manager Frank Feichtinger was fired, two board members resigned, and Leisnoi had closed its offices and its records were in boxes. Financially, Leisnoi had more debts than assets. Given the circumstances, this court finds that the directors did not breach their fiduciary duty in failing to prepare and send out an annual report that year.

█ Lastly, there is the issue of audited financial reports. Leisnoi did not send out an audited financial report in the years 2002–2006. It would have cost $15,000–$25,000 for an audit to be performed. At trial, the individual directors testified that to a large extent they did not know that there was a statutory requirement that the corporation provide audited financial statements. In *Doyle v. Union Insurance Co.*, the court explained that "a violation by a trustee of a duty required by law, whether willful, fraudulent, or neglect, is a breach of trust and the trustee is liable for any damages proximately caused by the breach." [8]

█ It is axiomatic that ignorance of the law is no excuse, except in very limited circumstances.[9] A director has to act with the care, including reasonable inquiry, which an ordinarily prudent person in a like position would use under similar circumstances. Although a director is entitled to rely on information, opinions, reports or statements, prepared or presented by counsel, public accountants, or other persons as to matters that the director reasonably believes to be within the person's professional or expert competence, such reliance is not reasonable in light of an explicit federal statute. Because this court previously ruled that the attorney-client privilege belonged to the corporation and the Board of Directors, and not

---

8. 202 Neb. 599, 277 N.W.2d 36, 41 (1979).

9. *See Cornwall v. State,* 915 P.2d 640, 648 (Alaska App.1996).

the individual directors, that privilege could not be waived by the individual defendants. Regardless of advice, where there is a clear statute and there is little ambiguity that an annual audit is required, the individual directors did not act with reasonable care and to that extent breached their fiduciary duties.

### Count V—Appointment of Interim Director

Alaska Statute 10.06.663 provides that if "the right of a director to hold office is in doubt, ... an interested person may petition the superior court to determine the identity of the director, or if there are no directors, to appoint directors to wind up the affairs of the corporation...." Based on the clear language of AS 10.06.663, this court may appoint directors only if the pre-condition that there are no directors is met, and this court's authority to appoint directors is only to wind up the corporation.

Absent the existence of those circumstances, this court may upon petition identify the directors.

Alaska Statute 10.06.418(b) provides that "[a] proxy is not valid after the expiration of 11 months from the date of the proxy...." The 2002, 2003, and 2005 proxies introduced into evidence have the language that the proxy must be tendered 60 days before the annual meeting. A reasonable construction of the language is that they must bear a date no more than 60 days before the annual meeting and the proxies are valid if the annual meeting is continued for a lack of quorum, as long as the continuation does not exceed a period of 11 months from the date of the proxy. Every proxy used in the 2005 election was used within 11 months and was valid.

The facts show that the current Board of Directors of Leisnoi comprises Frankie Grant, Carole Pagano, Frank Pagano, Kane Wolf, and Shannon Johnson.[10] They were properly elected or appointed to the Board.

10. Editorial note: In a shareholders' meeting held in January 2008, Frank Grant was not re-elected as a director. The superior court subsequently ordered that any prospective relief granted to the plaintiffs did not apply to Grant.

### Count VI—Declaratory Relief

Of the declaratory relief sought by plaintiffs, this court grants the request that the individual directors shall bring to the Board of Directors the necessity of conducting an annual audit. The directors shall raise this issue with the Board of Directors within 30 days. The decision of the Board of Directors shall be provided to the plaintiffs.

The remainder of the declaratory relief sought by plaintiffs has been addressed in the specific sections above.

DATED this 11 day of March 2008 at Anchorage, Alaska.

/s/ Sen K. Tan
Superior Court Judge

### APPENDIX D

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT ERICKSON SR., et al., Plaintiffs,

v.

KANE WOLF, et al., Defendants.

Case No. 3AN–04–13743CI

### ORDER RE: MOTION FOR POST–TRIAL HEARING TO DETERMINE DAMAGES/MANDAMUS AND CROSS–MOTION TO AMEND FINDINGS

At the outset, this court notes that the "writ of mandamus is abolished" in Alaska.[1] Thus the relief sought is really for this court to impose nominal damages and to hold a further hearing on damages after the Board meets to make decisions regarding ANCSA reporting requirements.

In the opposition to the motion, defendants have cross-motioned the court to amend its findings regarding fiduciary breach under Civil Rule 52(b), to state that defendants did not breach their fiduciary duties.

In their motion, plaintiffs argue there is a per se rule that where there is a

1. Alaska R. Civ. P. 91.

breach of fiduciary duties, there must be an award of damages.[2] As explained in *Loudon*, the per se rule has a very narrow application only to circumstances "where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders."[3] *Loudon* discussed the case of *In Re Tri–Star Pictures, Inc. Litigation*, where the plaintiffs suffered a proportionate loss of voting power from the issuance of 75 million shares as a result of the breach of fiduciary duty.[4] Thus, it does not appear that the per se rule applies here.

More importantly, in *Brown v. Dick*, the Alaska Supreme Court specifically rejected or further limited the rule set out in *Loudon*.[5]

This court concludes that nominal damages shall not be awarded. In addition to nominal damages, it appears that plaintiffs are seeking a hearing to prove actual damages. Plaintiffs did not make such a claim at trial. The legal theory behind the claim for damages was in the Third Amended Complaint, but plaintiffs chose not to put on any evidence of actual damages at trial. A review of plaintiffs' Proposed Findings of Fact and Conclusions of Law supports this point, as plaintiffs ask for declaratory and injunctive relief.

Accordingly, this court will not re-open the case for a damages trial.[6]

In response to the Motion for Post–Trial Hearing, the defendants filed a Cross–Motion to Amend the Findings of Fact and Conclusions of Law. Although an extension of time was granted to plaintiffs to file an opposition to the motion, no opposition was filed.

Defendants request that this court add language that "[b]ecause the plaintiffs failed to prove that they suffered any damages, an element of the tort of fiduciary breach, this court cannot hold that the defendants' duty was breached." Even without opposition, this court declines to amend the Findings of Fact and Conclusions of Law, as the proposed amendment is an inaccurate statement of the law. There is no dispute that the defendant directors here owed a fiduciary duty to the shareholders, and there was a breach of the duty. There is no evidence of actual damages or causation of those damages. Thus, as discussed above, this court has not awarded any damages to the plaintiffs.

Damages, however, are not the only relief sought in this case. Plaintiffs have sought declaratory and injunctive relief. To that extent, as to the three individual directors, this court has granted a remedy, for the individual directors to raise the issue with Leisnoi's Board of Directors.

The Motion to Amend is DENIED.

DATED Sept. 26/08.

/s/ Sen K. Tan
Superior Court Judge

### APPENDIX E

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

ROBERT ERICKSON SR., *et al.*, Plaintiffs,

v.

KANE WOLF, *et al.*, Defendants.

Case No. 3AN–04–13743CI

### ORDER RE: MOTION TO BAR DEFENDANTS FROM INDEMNIFICATION BY CORPORATION

Plaintiffs have filed a motion to bar defendants from indemnification by the corporation, pursuant to AS 10.06.490. It appears that plaintiffs are seeking only to bar indemnification on the non-prevailing claims.

As with prior rulings in this case, this court starts with the consistent premise that

---

**2.** *Loudon v. Archer–Daniels–Midland Co.*, 700 A.2d 135, 141 (Del.1997).

**3.** *Id.* at 142.

**4.** *Id.* at 141–43 (discussing *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del.1993)).

**5.** 107 P.3d 260, 266 (Alaska 2005).

**6.** The request for a status conference to set on a damages trial is also denied.

the corporation Leisnoi, Inc. ("Leisnoi") is not a party to this lawsuit. Thus, the question of whether the corporation failed to abide by AS 10.06.490 is not a question on which this court can grant relief.

This court is asked to determine if there is any statutory bar for the defendants to receive indemnification by the corporation. The answer is no.

Looking at the statute, AS 10.06.490(a) applies to this dispute. Alaska Statute 10.06.490(b) does not apply, as it addresses shareholder derivative actions. Under AS 10.06.490(a), the conduct of the directors must be "in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." This court's findings of fact and conclusions of law specifically found that the defendant directors acted in good faith and in Leisnoi's best interest. On the breach of fiduciary duty, this court found that the directors were negligent in not knowing about the federal requirement to conduct an audit. This does not bar indemnification.

Further, AS 10.06.490(c) provides that where a director "has been successful on the merits or otherwise in defense of an action or proceeding referred to in (a) or (b) of this section, or in defense of a claim, issue, or matter in the action or proceeding," the director shall be indemnified. Clearly, from this court's findings of fact and conclusions of law, the defendant directors were successful in defense of this action. The minor victory of the plaintiffs on one claim pales beside the overwhelming victory of the defendants. Again this is not a bar to indemnification.

Lastly, this court finds that AS 10.06.490 has been satisfied, as there was a resolution by the majority of the directors who were not parties to the action to indemnify the defendant directors.

Accordingly, there is no bar to the defendant directors receiving indemnification provided by Leisnoi. The motion to bar indemnification is DENIED.

Dated Sept. 26/08

/s/ Sen K. Tan
Superior Court Judge